[Civ. No. 2786. First Appellate District, Division Two.—June 9, 1919.]

## J. J. GILL, Respondent, v. EVA E. PEPPIN et al., Defendants; JENNIE F. STONE et al., Appellants.

[1] MORTGAGES—FORECLOSURE—DEFICIENCY JUDGMENT—SATISFACTION—PRESUMPTION FROM RECORD.—Where the decree in an action to foreclose a mortgage contains a provision for the docketing of a deficiency judgment, but the record on appeal from an order setting aside such decree and annulling a sale made under it is silent with reference to the entry of a deficiency judgment following such sale, the presumption is that the proceeds from the sale of the mortgaged property satisfied the judgment.

[2] ID.—EFFECT OF SATISFACTION ON JUDGMENT.—In an action to foreclose a mortgage, satisfaction of the judgment renders the judgment conclusive, subject to the power of a court of equity to set it aside in a separate suit for fraud or mistake, or to vacate it on motion within the period limited by section 473 of the Code of Civil Procedure.

[3] ID.—VACATION OF DECREE—WANT OF NOTICE—VOID ORDER.—An order setting aside a decree of foreclosure, annulling a sale made under it, and permitting the plaintiff to file an amended complaint to reform the mortgage for mistake, is void, where made without notice to the adverse parties, notwithstanding such order is made on motion under section 473 of the Code of Civil Procedure, and within the time limited by that section.

[4] ID.—SETTING ASIDE JUDGMENT—QUESTIONS TO BE CONSIDERED.—Where a judgment is sought to be set aside, the question is not whether the judgment was right or wrong, but whether it was a valid and final judgment.

[5] ID.—DISCRETION OF TRIAL COURT—REVIEW BY APPELLATE COURT.—While section 473 of the Code of Civil Procedure is to be liberally construed, and much is left to the discretion of the lower court in regard to the granting of relief under it, when it appears that the lower court has been led into error in setting aside a judgment, and substantial rights of parties have been taken from them without notice and upon an insufficient showing, the appellate court cannot evade its clear duty to cause the parties to be restored to their original positions in regard to the judgment.

[6] ID.—ORDER SETTING ASIDE DECREE OF FORECLOSURE—INSUFFICIENT AFFIDAVIT BY ATTORNEY.—An affidavit by the attorney for the plaintiff is not sufficient to justify an order setting aside a decree of foreclosure, annulling a sale made under it, and permitting the plaintiff to file an amended complaint to reform the mortgage for

mistake as to the description of the property, if it does not state why it is not made by the plaintiff, nor that the attorney is familiar with the facts and that he believes or has advised his client that he has either a meritorious cause of action or grounds for setting aside the decree and the sale made under it, and there is no statement to explain why the mistake was not discovered before the plaintiff commenced the suit in which he proved the mortgage of the lot described in it, and sold under the decree, none to show that the judgment was not fully satisfied from the proceeds of the sale of the lot described in the mortgage, and none concerning what other property was sought to be subjected to the lien of the five year old mortgage, nor what new parties and intervening rights might be affected by the correction of the alleged mistake.

[7] ID.—NECESSITY FOR AFFIDAVIT OF MERITS.—Where the judgment is regular on its face, an affidavit of merits is indispensable as a basis of a motion to set it aside on the ground of mistake.

[8] ID.—BASIS FOR ORDER—RECITAL OF EVIDENCE—PRESUMPTIONS.— Where the record on appeal shows that the order of the trial court setting aside a decree of foreclosure was made upon specific evidence, the appellate court cannot presume that such order was made upon some other evidence which might have been before the trial court.

[9] ID.—SETTING ASIDE OF DEFAULT—INADVERTENCE.—Inadvertence in the abstract is no plea upon which to set aside a default, but the court must be made acquainted with the reasons for the inadvertence and, if satisfactory, will act upon them and relieve from the burdens caused by them; but, if the inadvertence is wholly inexcusable, as if it arises from gross negligence, the court will not look upon it kindly and will have none of it.

APPEAL from an order vacating a decree of foreclosure, annulling the sale made under it, and permitting the filing of an amended complaint to reform the mortgage for mistake. T. W. Harris, Judge. Reversed.

The facts are stated in the opinion of the court.

Raymond Perry for Appellants.

A. A. Rogers, Walter J. Burpee and T. P. Wittschen for Respondents.

BRITTAIN, J.—After the sale of mortgaged property under a decree of foreclosure, the plaintiff *ex parte* procured an order vacating the decree, annulling the sale and

permitting the filing of an amended complaint to reform the mortgage for mistake. Subsequently on notice, separate motions to set aside the *ex parte* order were made by new defendants brought into the suit under a summons issued on the amended complaint, and by those of the original defendants who were directly affected by the decree of foreclosure. Both motions were denied. The new parties appeal from the second order only, and the original defendants appeal from the *ex parte* order and from the order refusing to set it aside. Under stipulation the appeals are presented on one record and are determined together.

On behalf of the respondent it is contended that neither appeal from the second order may be considered because the order vacating the decree was appealable. The case appears to be within recognized exceptions to the rule in that the order was made on an *ex parte* application and it was adverse to the new defendants who claimed under the original defendants. (*Pignaz* v. *Burnett*, 119 Cal. 157, 163, [51 Pac. 48]; *Title Ins. & Trust Co.* v. *California Dev. Co.*, 159 Cal. 484, [114 Pac. 838].) It is unnecessary, however, to base the decision on the appeals from the second order, because the order vacating the decree must be reversed, upon the grounds stated in this opinion.

The plaintiff and respondent, as the assignee of the original mortgagee, sued in the ordinary form to foreclose a mortgage made on April 19, 1913, to secure the payment of a debt evidenced by a note of even date with the mortgage, for one thousand four hundred dollars, payable one year after date, with interest at seven per cent, compounded every three months. The assignment of the note and mortgage to the plaintiff was in August, 1914, after the maturity of the note. The mortgage, which was recorded three days after its execution, accurately described by metes and bounds a lot in the city of Oakland, designated for convenience as lot 1. The plaintiff sued Eva E. Peppin, and J. B. Peppin, Jr., her husband, the original mortgagors, together with Jennie F. Stone and E. B. and A. L. Stone Company, a corporation, and certain fictitiously named defendants, who it was alleged claimed an interest in the mortgaged property, subject to the lien of the mortgage. The suit was commenced November 1, 1917, and,

after service and return of the summons, on January 8, 1918, the plaintiff showed the default of the named defendants had been entered, dismissed the action as to the fictitiously named defendants and proved his mortgage and debt, including interest, attorneys' fees and costs, of $1,631.88. The court thereupon made a decree in accordance with the allegations and prayer of the complaint, and the mortgage, a copy of which was appended to the complaint as an exhibit, and ordered a sale of the mortgaged property by a commissioner named in the decree, which contained a provision for the docketing of a deficiency judgment. The court, therefore, had jurisdiction of the subject matter and the parties, and the judgment followed the complaint, the allegations of which were admitted by the defaults. The judgment was entered January 11, 1918, and was executed on February 12, 1918, by the sale of lot 1, as described in both the mortgage and the decree. No deficiency judgment was entered, or at least the record fails to disclose anything from which the contrary might be inferred. [1] In the absence of any showing in the record upon the subject, the presumption is that the proceeds from the sale of the mortgaged property satisfied the judgment. (Code Civ. Proc., sec. 1963, subds. 5, 20, 28.)

[2] Subject to the power of a court of equity to set aside the judgment in a separate suit for fraud or mistake, or within the period limited by the section, for the trial court to vacate the judgment on motion under section 473 of the Code of Civil Procedure, the satisfaction of the judgment rendered it conclusive. "By section 1049 of the Code of Civil Procedure, the cause had then ceased to be pending in the court, and the court was without any jurisdiction to render any further judgment therein. . . . The safety and tranquillity of parties require that their interest should not be constantly suspended, and their repose liable to be disturbed at any moment by the discretion of the court. . . . (*Brackett* v. *Banegas,* 99 Cal. 623, 627, [34 Pac. 344, 345]; *Carpentier* v. *Hart,* 5 Cal. 406.) In *Brackett* v. *Banegas,* the facts were substantially the same as those recited above, except that the application was made after the time limited by section 473. That the reasoning of the court concerning the considerations moving the legislature to limit the time of the application is directly appli-

cable to considerations which should control any court upon an *ex parte* motion made within the time limit, is apparent from the following quotation: "By the judgment as originally entered herein, the obligation of the mortgagor to the plaintiff had become fixed at a certain amount, bearing interest at the rate of seven per cent per annum. If, however, the court could at any time thereafter vacate this judgment after it had been satisfied, without any notice to the mortgagor, and re-establish the original obligation against him, bearing interest at the rate of eighteen per cent per annum," (or, in the present case compounded quarterly) "its judgment would not have been a 'final determination of the rights of the parties,' and the parties to the action could never feel secure in any action of the court. For the reason that the law does not sanction such injustice, it has been wisely determined by the legislature that the court shall have no power upon mere motion to vacate its judgment after the lapse of six months from its entry." (*Brackett* v. *Banegas,* 99 Cal. 627, [34 Pac. 345].) [3] While the court within the six months, upon mere motion may vacate the judgment, the injustice of setting aside a judgment beneficial to the judgment debtor without notice, is not sanctioned by the code. Section 473 limits the time beyond which a motion cannot be entertained, even though notice be given and a showing of equitable considerations is made. It does not dispense either with the showing required or the necessity of notice to adverse parties. The court and the plaintiff were as effectually bound by the satisfied judgment as were the defendants. It determined in favor of the defendants the amount of the mortgage debt and eliminated in their favor the onerous provision for quarterly compounding of interest. It further determined that lot 1 was subject to the lien, and, therefore, that no other lot was affected by either the mortgage or the judgment. (Code Civ. Proc., sec. 1908; *Hutchings* v. *Ebeler,* 46 Cal. 557; *Spaulding* v. *Howard,* 121 Cal. 194, [53 Pac. 563].) The rule of *res judicata* rests on the two maxims that "a man should not be twice vexed for the same cause," and that "it is for the public good that there be an end of litigation." [4] Where the judgment is sought to be set aside, the question is not whether the judgment was right or wrong, but whether it was a valid and

final judgment. (*Lamb* v. *Wahlenmaier*, 144 Cal. 95, [103 Am. St. Rep. 66, 77 Pac. 765].)

It was sought by the amended complaint to substitute for the mortgaged lot another lot, designated as lot 2, owned by the E. B. and A. L. Stone Company, and to effect this purpose the former adjudication was set aside *ex parte*. Where under a provision of the Practice Act, the court made an order directing the adverse party to a judgment to appear at a time fixed to show cause why it should not be vacated, the supreme court, solely for the reason that it did not affirmatively appear that a copy of the order was served on him or that he had notice of the time when the motion would be heard, reversed the order vacating the judgment. (*Vallejo* v. *Green*, 16 Cal. 160; *Reilly* v. *Ruddock*, 41 Cal. 312.) In determining the effect of section 473, the application of the rule of *Vallejo* v. *Green* to that section is recognized. "Section 473 provides, in effect, that the relief therein specified may not be given until after notice to the adverse party, but it does not provide that no application for relief can be made to the court until after such notice has been given." (*Brownell* v. *Superior Court*, 157 Cal. 709, [109 Pac. 94].) The only cases where an order vacating an *ex parte* application has been sustained, accentuate the rule that vested rights may not be taken without notice and an opportunity of hearing. They are cases where the court vacated former improvident *ex parte* orders by which such rights were disturbed. (*Whitney* v. *Superior Court*, 147 Cal. 536, [82 Pac. 37]; *Robson* v. *Superior Court*, 171 Cal. 588, [154 Pac. 8].) In such cases the second order was sustained, not as an *ex parte* adjudication of vested rights, but because no rights were vested by the first order made without the court having gained jurisdiction of the parties affected. "The objection that the lower court has improperly vacated its final order is one that goes to the jurisdiction of the court." (*Lang* v. *Superior Court*, 71 Cal. 491, [12 Pac. 306, 416]; *Carpenter* v. *Superior Court*, 75 Cal. 596, [19 Pac. 174]; *Holtum* v. *Greif*, 144 Cal. 521, [78 Pac. 11].) The judgment was valid on its face, and unless it was set aside in reliance upon section 473, the court was without power to vacate it. (*Jacks* v. *Baldez*, 97 Cal. 91, [31 Pac. 899].) It is no answer to say that the parties may litigate their substantial rights under the mortgage

after their substantial rights under the judgment have been taken from them without notice. "The validity of every judgment depends on the jurisdiction of the court before it was rendered, not upon what may occur subsequently." (*Pennoyer* v. *Neff*, 95 U. S. 728, [24 L. Ed. 565, see, also, Rose's U. S. Notes].)

The decision might rest on the jurisdictional ground of lack of notice, but so anxious are appellate courts to sustain the actions of trial courts, it is considered proper briefly to state other reasons why the order vacating the judgment must be reversed. [5] While section 473 is to be liberally construed, and much is left to the discretion of the lower court in regard to the granting of relief under it, when it appears that the lower court has been led into error and substantial rights of parties have been taken from them without notice and upon an insufficient showing, the appellate court cannot evade its clear duty to cause parties to be restored to their original positions in regard to the judgment. The discretion "is not a mental discretion to be exercised *ex gratia,* but a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases where an impartial mind hesitates." (*Bailey* v. *Taaffe,* 29 Cal. 424; *Miller* v. *Carr,* 116 Cal. 378, [58 Am. St. Rep. 180, 48 Pac. 324].)

Whether a valid judgment is attacked in a separate suit or by motion, the considerations which should move the court are substantially the same, because the same remedy is sought, and if given, awarded for the same reasons: (*Estudillo* v. *Security Loan etc. Co.,* 149 Cal. 565, [87 Pac. 19].) [6] The order vacating the decree in terms stated that good cause therefor appeared "by the annexed affidavit." The affidavit annexed to the order was by the attorney for the plaintiff. It did not state why it was not made by the plaintiff, nor that the attorney was familiar with the facts and he believed or had advised his client that he had either a meritorious cause of action or grounds for setting aside the decree and the sale made under it. The only averment concerning mistake was that after the commissioner's sale "it came to the knowledge of the plaintiff

that by mutual mistake of all the parties to this action said mortgage did not cover and describe the property intended to be covered and described therein, and by reason thereof it is necessary that said mortgage be revised and reformed so as to express the true intent of the parties hereto before the same be foreclosed.''

There was no statement to explain why the mistake was not discovered before the plaintiff commenced the suit in which he proved the mortgage of the lot described in it, and sold under the decree, none to show that the judgment was not fully satisfied from the proceeds of the sale of the lot which was mortgaged, and none concerning what other property was sought to be subjected to the lien of the five year old mortgage, nor what new parties and intervening rights might be affected. [7] Where the judgment is regular on its face, an affidavit of merits is indispensable as a basis of the motion. (*Nevada Bank* v. *Dresbach,* 63 Cal. 324; *Bailey* v. *Taaffe,* 29 Cal. 422; *Parkside Realty Co.* v. *MacDonald,* 167 Cal. 342, [139 Pac. 805].) [8] It is argued that despite the recital by which the court bound its action to the wholly insufficient affidavit of the attorney, it had before it the proposed amended complaint, and that it supplied the defects in the attorney's affidavit. While every reasonable inference should be drawn to support the action of the trial court, when the record shows the order was made upon specific evidence, the appellate court cannot indulge in presumptions to falsify the record. As early as 1874, the supreme court said that rule had been repeated so often that it had become trite. (*Abbey Homestead Assn.* v. *Willard,* 48 Cal. 619.)

Even though it could be assumed the court acted on the allegations contained in the proposed amended complaint with the averments of the attorney's affidavit, the order vacating the judgment could not be sustained. In the amended complaint it was alleged in substance, that in 1913 the original mortgagors owned adjoining lots 1 and 2; that they agreed with McDonald, the original mortgagee, that if he would lend them one thousand four hundred dollars to be secured by a mortgage of lot 2, they would build on that lot a house according to plans then before the parties, to cost not less than the one thousand four hundred dollars to be loaned; that by a mutual mistake lot

1 was described in the mortgage instead of lot 2; that the one thousand four hundred dollars was loaned and the house built on lot 2 with the one thousand four hundred dollars; that a month after the making of the mortgage the mortgagors by grant deed conveyed both lots to Jennie F. Stone and E. B. and A. L. Stone Company; that on September 1, 1917, E. B. and A. L. Stone Company by grant deed conveyed the mortgaged lot 1 to Jennie F. Stone, and on October 1, 1917, the Stone Company contracted to sell the unmortgaged lot 2, with the house, to John Sloss and Margaret Sloss for three thousand five hundred dollars, of which $175 had been paid; that Mr. and Mrs. Sloss had entered into possession of the house, and, inferentially at least, were living there when the suit to foreclose the mortgage on lot 1 was commenced, and continuously thereafter, as appears from the attorney's affidavit and the order vacating the decree, until the plaintiff upon his first visit to them, after the commissioner's sale, learned that the mortgage did not cover their home. It further appears from the amended complaint that the plaintiff bought the mortgage after the maturity of the note secured by it. It is alleged that both the Stone deeds were without consideration, and the bald statement is made as to each of the changes of ownership of the mortgage and the property, that the parties engaged in the particular transaction knew of the original agreement that the mortgage should cover the lot it did not cover, and that at the time of each transaction the parties to it believed the mortgage described the property on which the house was built. There was no suggestion of fraudulent concealment, and no fact was stated to explain why the information so readily gained after the foreclosure sale was not discovered before the suit was commenced or within the period of nearly three months which elapsed between the commencement of the suit and the date of the decree. The mortgage, its assignment, and each of the deeds were recorded, and the most careless observer would have been able to distinguish the difference between 187½ feet and 225 feet, the distance from the corner of the block respectively to the nearest line of the mortgaged and the unmortgaged property. No fact is stated which in any way explains why the successive owners of the lots and the mortgage dealt as they did for a period of five years

with matters of public record without any of them discovering that none of them had taken the trouble to find out with what he was dealing. If the owners of the lots were negligent in this regard, the owner of the mortgage was not thereby excused from ascertaining what an ordinarily prudent man buying the mortgage might have learned at the time of the purchase, and what he ought to have learned before commencing suit. "'The reasons, and the causes, and the excuses for the inadvertence are matters which concern the court, and these are not stated. [9] Inadvertence in the abstract is no plea upon which to set aside a default. The court must be made acquainted with the reasons for the inadvertence and, if satisfactory, will act upon them and relieve from burdens caused by them; but, if the inadvertence is wholly inexcusable, as if it arises from gross negligence, the court will not look upon it kindly, and will have none of it.'" (*Shearman* v. *Jorgensen*, 106 Cal. 485, [39 Pac. 864].) There is no showing that the judgment debt was not fully satisfied by the sale of lot 1. If it was sold to a stranger, the affidavit should have shown how much was paid and what became of the money. If it was bought in by the plaintiff for the debt of a trifle over one thousand six hundred dollars, did he not get all he was entitled to have? The lot with the one thousand four hundred dollar house is under contract of sale for three thousand five hundred dollars. In the absence of any statement to the contrary, it would seem that the adjoining lot without the one thousand four hundred dollar house is worth two thousand one hundred dollars, or at least as much as the debt. Equity will not overturn a judgment valid on its face unless it is an unjust judgment. It must appear that a like result would not follow in the new litigation. (*Harnish* v. *Bramer*, 71 Cal. 155–159, [11 Pac. 888].) If the plaintiff has a cause of action for relief from the judgment, that right may be established in a new suit, where the other parties to the judgment may resist the reformation of the mortgage not only, but after the court has jurisdiction of them, they may defend against the setting aside of the judgment under which they claim vested and beneficial rights.

The order vacating the judgment is reversed.

Langdon, P. J., and Haven, J., concurred.