[Civ. No. 3232.   Fourth Dist.   Nov. 8, 1943.]

J. BUFORD WRIGHT et al., Respondents, v. EARL C. MUTZ, Appellant.

Luckel, Robnett & Monningh for Appellant.

Fred A. Wilson for Respondents.

MARKS, J.—This is an appeal from a judgment awarding plaintiffs possession of thirty cows and six calves, together with costs of suit. Defendant claimed lawful possession of the cattle under the estray laws of the state. (Secs. 391 to 402, inc., Agr. Code.)

The evidence establishes the following facts: That plaintiffs Cyrus J. Langford and J. Buford Wright, as copartners, were the owners of the cattle; that the cows were branded with the Arrowhead brand; that the calves were unbranded; that these cattle, running unattended, trespassed on defendant's land and were distrained by defendant; that plaintiffs filed this action in claim and delivery on April 29, 1942, and had possession of the cattle taken from defendant and delivered to them.

Defendant attempted to justify his possession of twenty-two of the cows and four of the calves under a notice or claim of lien, dated April 22, 1942. Objection was made to the introduction of this document, the grounds of objection being restated by counsel for plaintiffs as follows: ". . . one being, as you will recall, that with regard to Mr. Langford there was not personal service, and with respect to Mr. Wright there was not any attempt of service of any kind. The third ground I would like to urge is that the notice itself is not directed to Mr. Wright. It just says, 'to Mr. Cyrus Langford and his agents, to all owners and their agents, and to whom it may concern.' " This objection was sustained.

The same objection was made to a second notice or claim of lien dated April 29, 1942, wherein a lien was sought on eight cows and two calves; to certified copies of the two notices which had been recorded in the office of the County Recorder of San Bernardino County in due time; to affidavits of publication of the two notices in a paper of general circulation in San Bernardino County for the time prescribed by law, and to a receipted bill for the costs of such publications. In this connection it should be noted that counsel for plaintiffs stipulated that the bill was reasonable and defendant testified he

had paid the same. It is timely to note that had the objections to the affidavits of publication been made on proper grounds we may concede that they should have been sustained, but not on the grounds stated in the objections. (*Soares* v. *Ghisletta*, 1 Cal.App.2d 402 [36 P.2d 668].)

The basis of the trial court's rulings on all objections appears in the following: "If I may again ask Your Honor, the ruling at this time is again based upon your theory that we have no lien simply because we failed to give personal notice on the plaintiff? THE COURT: Yes. That is the theory I am ruling on." It will, then, first be necessary to consider the notices and claims of liens and the manner of their service on plaintiffs.

The notice dated April 22, 1942, opens as follows:

"NOTICE TO OWNERS, AND OTHERS, OF ANIMALS CAUGHT DOING DAMAGE AND TRESPASSING AND NOTICE OF TIME AND PLACE OF SALE

"To MR. CYRUS LANGFORD and his agents, to ALL OWNERS and their agents, and to WHOM IT MAY CONCERN:"

This notice was enclosed in an envelope addressed as follows:

"Mr. Cyrus Langford,
14341 Millbrook Dr.,
Los Angeles,
(Sherman Oaks),
Calif."

This was registered, with postage prepaid, and a return receipt requested. Mr. Langford admitted receiving this notice on or about April 23, 1942. It was produced in court by counsel for plaintiffs. We will refer to this notice as Exhibit B.

The notice dated April 29, 1942, claiming the lien on eight cows and two calves distrained on April 26, 1942, has the following:

"NOTICE TO OWNERS, AND OTHERS, OF ANIMALS CAUGHT DOING DAMAGE AND TRESPASSING AND NOTICE OF TIME AND PLACE OF SALE

"To MR. CYRUS LANGFORD and his agents, to Mr. Buford Wright and his agents, to Wright and Langford, a firm name, and its agents, to ALL OWNERS and their agents, and to WHOM IT MAY CONCERN:"

It was enclosed in an envelope addressed as follows:

"Mr. Cyrus Langford, and Mr. Buford Wright,
14341 Millbrook Dr.,
Los Angeles,
(Sherman Oaks),
Calif."

It was also registered with postage prepaid and return receipt requested. Langford admitted receiving this notice and counsel for plaintiffs produced it in court. We will refer to it as Exhibit C.

■ It is argued that Exhibit B is fatally defective in that it did not notify both owners of the cattle of the claimed lien as it was addressed to Langford only and not to Langford and Wright. This may be true, but the statute does not require such a notice. Section 392 of the Agricultural Code contains the following:

"If such lienholder knows the owner of said animal or the person having charge thereof, then, within five days after said animal is seized, he shall, in lieu of filing the notice, notify the owner of said animal, or the person having charge thereof, which notice shall contain the same information as required in a notice to be filed, . . . "

Langford testified that his partner Wright was sick at the time and in a hospital. The inference is strong from Langford's testimony that he was in charge of the cattle at the time. Under these circumstances notice to Langford was sufficient. Further, we may apply the rule announced in *Carstensen* v. *Gottesburen,* 215 Cal. 258 [9 P.2d 831], where it is said:

"Nor do we find any merit in the claim that the evidence fails to show that a demand for possession had been made upon the defendant Sheldon. Inasmuch as the appellant and Sheldon were partners and in possession of the barge, a notice to or demand upon either was sufficient. Section 2406 of the Civil Code provides that, 'Notice to any partner of any matter relating to partnership affairs, . . . operates as notice to . . . the partnership. . . .' Moreover, section 2403 of the Civil Code makes an individual partner an agent for the partnership in the transaction of its business, and under section 2332 of the same code, notice to the agent is notice to the principal."

■ Plaintiffs argue that service of the notices by mail was not sufficient as the statute requires the lien claimant to

notify the owner of the claimed lien. They argue that this requires personal service on the owners, citing *Stockton Automobile Co.* v. *Confer,* 154 Cal. 402 [97 P. 881].

The Agricultural Code does not specify the precise manner in which the notice of the claim of lien must be given to the owner or the person having charge of cattle. In *Heinlen* v. *Heilbron,* 94 Cal. 636 [30 P. 8], it is said:

"The 'delivery' which constitutes a personal service under section 1011 need not be made by the individual who is attempting to make the service, but can be effected through a clerk or messenger, or through any agency by which a 'delivery' can be made, and when the notice is so delivered, the service becomes a personal service. The fact that the person upon whom the service is to be made resides or has his office in a different place from that of the person making the service does not require that the service be made by mail, or preclude a personal service, and the person seeking to make the service can avail himself of any agency, such as Wells, Fargo & Co., or the instrumentality of the post-office department, with as much effect as if he had employed any other messenger. The delivery of the notice through such agency renders the service personal, and the proof of such delivery establishes a personal service."

*Shearman* v. *Jorgensen,* 106 Cal. 483 [39 P. 863], and *Colyear* v. *Tobriner,* 7 Cal.2d 735 [62 P.2d 741, 109 A.L.R. 191], are to the same effect. We therefore conclude that the notices were properly given and properly served in conformity to the requirements of the statute.

This would seem to dispose of the grounds of the objections made in the trial court. However, as the case must be tried again, and counsel argue other questions which will probably arise at the second trial, it is not out of place to consider them here.

Exhibit B states that ten cows and three calves were distrained on April 18, one cow and one calf on April 19, three cows on April 20, two cows on April 21, and six cows on April 22, 1942. Plaintiffs argue that as separate liens attached on different cattle on each of those five days, five separate notices or claims or liens should have been made.

We cannot agree with this argument. It is true that a lien attaches on each distraint. (*Wigmore* v. *Buell,* 122 Cal. 144 [54 P. 600].) To perpetuate such a lien and to permit its enforcement, the notice must be given "within five days after said animal is seized." Here there were five separate seizures

of animals on five consecutive days. The notice was given and served within five days from the first seizure and within a lesser number of days after each subsequent seizure. As the purpose of the statute is to give notice to the owner and so permit him to redeem his cattle and prevent foreclosure of the lien, we can see no good reason why five separate notices must be served, where, as here, the notice was served within the time limited by the statute. The same argument cannot be made as to Exhibit C as there was but one distraint and the service of the notice was timely.

Both notices made claims for damages alleged to have been suffered by defendant in excess of the amounts he was authorized to recover. Plaintiffs argue that this rendered his liens void and constituted a waiver of them.

█ Where the distrainer demands a sum in excess of that to which he is lawfully entitled, section 395 of the Agricultural Code provides the remedy and it does not include waiver or forfeiture of the lien. The argument was made in *Blanchard* v. *Scarpa*, 44 Cal.App. 648 [187 P. 29], under a prior but similar statute, that demand of a larger sum than that legally collectible voided the lien, and was disposed of as follows:

". . . while it is true that the defendant, at the time of the plaintiffs' demand for their said property, claimed a larger sum than that to which he was entitled under the provisions of the Estray Act, nevertheless, under the express terms of section 4 of said act, it was the duty of the plaintiffs, if dissatisfied with the amount charged by the taker-up for costs and expenses, to have tendered to him the amount to which he was properly entitled before commencing suit for the recovery of the possession of their said property. The section of the act in question further expressly provides that 'No return of such animal or animals shall be adjudged until the plaintiff shall pay to the defendant, or deposit in court payable to him, the amount of all such expenses.' These being the terms of the law relating to estrays, it was clearly the duty of the trial court to have sustained the defendant's lien and to have provided in its judgment for the full payment of the amount to which it had held the defendant entitled. Its judgment was, therefore, erroneous in awarding to the plaintiffs the possession of their said property, and in mulcting the defendant with the costs of the action."

█ Plaintiffs did not tender defendant his costs as re-

quired by the statute, and they deposited nothing in court for him. The judgment did not require them so to do. It is true that Mr. Langford testified that he offered defendant $100 for his damages, costs and expenses of the distraint and the right to pasture plaintiffs' cattle on defendant's property during the remainder of the season. It is clear that this was not such a tender as is required by the statute and contained conditions not contemplated by it.

Nothing we have said should be construed as indicating our belief that all the steps to perpetuate the liens taken by defendant were necessary where he knew the owners of the cattle.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.