[Civ. No. 15429. First Dist., Div. One. May 6, 1953.]

ARAM VARTANIAN, Respondent, v. WALTER CROLL, Appellant.

Richards & Rankin for Appellant.

Robert H. Kroninger for Respondent.

PETERS, P. J.—This is an appeal from an order made under section 473 of the Code of Civil Procedure vacating and setting aside a judgment in favor of defendant on the ground that such judgment had been entered out of mistake, inadvertence and excusable neglect of the plaintiff and by reason of fraud perpetrated upon the court by the defendant. The same order permitted plaintiff to file an amended complaint. The original trial on the merits was before the court without a jury, and before the same judge who granted the motion. Defendant appeals, contending that, in granting this relief, the trial court abused its discretion as a matter of law.

The complaint upon which the cause proceeded to trial was for an accounting for secret profits allegedly secured by appellant, who is a real estate broker, while acting as the agent of respondent. The complaint alleges that respondent employed appellant to purchase a motel in Calistoga; that appellant represented that the property could not be purchased for less than $65,000; that appellant concealed the fact that the motel could be purchased for $40,000, and appellant did in fact purchase it for that sum but sold it to respondent for $65,000; that in reliance on these representations respondent delivered to appellant a deed to certain Oakland property worth $25,000 and was induced, by false representations, to make this deed to appellant. The prayer requests that appellant either account for the Oakland property or pay to respondent the $25,000 secret profit.

The appellant filed a general denial, and the cause proceeded to trial. The trial record was not introduced in this proceeding, only the judgment roll in that action now being before us. The findings in that case are to the effect that respondent did not employ appellant as his agent to buy the motel; that appellant made no representations that the property could not be obtained for less than $65,000; that the Oakland property was not delivered to appellant to be used as part of the purchase price of the motel; that the Oakland property was not worth more than $7,500; that respondent and appellant in fact agreed to exchange properties; that appellant then had an option to buy the motel; that the parties dealt with each other as principals and at arm's length; that respondent knew that appellant was not his agent in the deal;

that the motel could not then have been secured for $40,000. Judgment denying respondent any relief was entered July 18, 1951, and a motion for a new trial was in due course denied. Respondent then changed lawyers. On January 7, 1952, 11 days before the six-month period prescribed by section 473 of the Code of Civil Procedure would have expired, respondent, through his new counsel, filed his notice of motion to vacate the judgment, and to permit the filing of an amended complaint. Respondent predicated his claim for such relief on his own inadvertence and excusable neglect, and on the further ground that appellant had perpetrated a fraud upon the court. Several affidavits were filed in support of these claims. In his own affidavit he averred that his first lawyer turned him over to his son who was not a lawyer, but that affiant thought that he was dealing with a lawyer; that he told the son the facts and showed him documents which, had they been introduced into evidence, would have resulted in a judgment in his favor; that such facts and documents were not introduced because the lawyer who tried the case was unfamiliar with the facts and did not fairly, properly or adequately represent respondent; that as a result the court was not fully apprised of the true facts. Respondent further averred that he can now definitely prove that appellant was his agent, had no valid option on the motel, and made a secret profit of $25,000, the value of the Oakland property. In support of these allegations that appellant was his agent, defrauded him, and made a secret profit, several other affidavits were filed. Helen Long, the former owner of the motel property, averred that at no time did she give appellant an option on the property; that she and her attorney negotiated with appellant as respondent's agent; that as a result of those negotiations the motel property was conveyed to respondent for $40,000; that appellant represented himself as respondent's agent; that she had no knowledge at all that the Oakland property was involved in the deal. The lawyer for Mrs. Long averred that appellant had no option on the motel property, and that appellant told him he was respondent's agent. This affiant incorporated a letter executed by the affiant and Mrs. Long and addressed to appellant, stating that they agreed to the sale of the property to respondent.

In support of the charge of fraud on the part of appellant the affidavit of Helen Dusio, secretary and property manager for Helen Long, was filed. It avers that her office adjoins that

of appellant in Oakland; that in October of 1949, at the direction of Joe Long, deceased husband of Helen Long, a listing of the motel directed to appellant "as real estate broker" was prepared by her and delivered to appellant; that about this time appellant became respondent's agent for the purpose of purchasing the motel; that she notarized the deed from respondent to appellant of the Oakland property; that from respondent's then demeanor it was her belief that he did not understand the true nature and consequences of the transaction; that in April, 1950, the month the main action was filed, defendant stated to her "If anybody asks you about the Calistoga deal, you don't know anything," to which affiant replied "Well, that would be true, because I don't know anything about it except that you were Mr. Vartanian's agent." The affidavit continues: "Walter Croll then stated, in a loud and threatening manner, 'That's exactly what I don't want you to say. And if you know what's good for you, you'll keep your mouth shut.'" The affidavit then concludes: "That by reason of said threat, affiant desired and continues to desire to avoid being a witness in, or to give evidence in any dispute which has arisen or which might arise as a result of said transaction."

Appellant filed two counteraffidavits alleging that the facts averred by respondent were available to respondent at the time of trial; that Helen Long, Helen Dusio, and Mrs. Long's attorney were all present in Alameda County prior to and during the trial; that at some undisclosed date he secured an option on the property from Joe Long, now deceased. He denied the conversation set forth in Helen Dusio's affidavit.

The former attorney for respondent averred that, prior to trial, he talked the case over with respondent; that at the times here involved his son was a law student who investigated some of the facts of the case for him; that the son made a synopsis of such facts and delivered it to affiant before trial, plus all pertinent letters and documents; that in his opinion the case was competently handled; that he had delivered all pertinent papers and documents in his file to respondent's new counsel in October and December, 1951.

Respondent also filed a proposed amended complaint setting forth, in four causes of action, in considerable detail, the claimed fraud and misrepresentations.

On these affidavits, after argument, the trial court made its order vacating the judgment, finding that such judgment had been rendered against respondent "by reason of his mis-

take, inadvertence and excusable neglect and by reason of fraud on the part of the defendant, [appellant] Walter Croll, perpetrated upon the court''; that respondent had a good cause of action on the merits, and that good cause appeared for the filing of the amended complaint, leave to file such pleading being granted.

It is appellant's main contention that the facts, as a matter of law, were insufficient to warrant the trial court in setting the judgment aside. In passing on this contention certain general principles must be kept in mind. A motion for relief under section 473 of the Code of Civil Procedure is addressed to the sound discretion of the trial court. Its determination will not be disturbed in the absence of a clear showing that this discretion has been abused. (See for a good statement of the rule, *Beard* v. *Beard*, 16 Cal.2d 645 [107 P.2d 385].) There are relatively few reversals in this field. Of course, where there has been the entry of a default and the trial court sets it aside the appellate courts seldom reverse because of the strong public policy favoring trials on their merits. That policy is not applicable here because in the instant case there has been a trial on the merits. Even in such cases, however, where the judgment is set aside by the same judge who tried the case, the appellate courts will affirm if there is any substantial showing of excusable neglect on the part of the moving party or some unconscionable conduct on the part of the adverse party.

In the instant case the respondent relies on the negligence of his first counsel in failing to produce available evidence as excusable neglect. Stated thus baldly, that alone is probably not sufficient to warrant relief under section 473. It is a general rule that a client is chargeable with the negligence of his attorney, and that his redress, if any, is against that attorney. . The mere fact that an attorney does not make a skillful presentation of a client's case will not, standing alone, usually warrant relief under section 473. (*Smith* v. *Tunstead*, 56 Cal. 175; *Nicol* v. *San Francisco*, 130 Cal. 288 [62 P. 513]; *Bonestell* v. *Western Automotive Finance Corp.*, 69 Cal.App. 719 [232 P. 734]; *Dineen* v. *San Francisco*, 38 Cal.App.2d 486 [101 P.2d 736]; *Romero* v. *Snyder*, 167 Cal. 216 [138 P. 1002]; *Slemons* v. *Paterson*, 14 Cal.2d 612 [96 P.2d 125].) Most, but not all, of these cases are affirmances of the order denying such relief.

But even the rule that a client is chargeable with the neglect of his attorney has its exceptions. The most obvious one

is that the attorney's mistake of law, as distinguished from mere ignorance of the law, may be sufficient to justify the granting of relief, and in some cases, the reversal of an order denying relief, even without any participation by the adverse party. (*Waite* v. *Southern Pac. Co.,* 192 Cal. 467 [221 P. 204] ; *Brill* v. *Fox,* 211 Cal. 739 [297 P. 25] ; *Roehl* v. *Texas Co.,* 107 Cal.App. 708 [291 P. 262] ; *Beard* v. *Beard,* 16 Cal.2d 645 [107 P.2d 385] ; *Harbaugh* v. *Honey Lake Valley Land & Water Co.,* 109 Cal. 70 [41 P. 792] ; *Douglass* v. *Todd,* 96 Cal. 655 [31 P. 623, 31 Am.St.Rep. 247] ; *Tuttle* v. *Scott,* 119 Cal. 586 [51 P. 849] ; *Fickeisen* v. *Peebler,* 77 Cal.App.2d 148 [174 P.2d 883] ; *Svistunoff* v. *Svistunoff,* 108 Cal.App.2d 638 [239 P.2d 650].) But the exceptions are not limited to cases involving mistakes of law. ▪ Negligence on the part of the attorney will, under some circumstances, justify the trial court in granting relief. Thus in *Stub* v. *Harrison,* 35 Cal. App.2d 685 [96 P.2d 979], a default was set aside by the trial court, and the order affirmed on appeal, in a case where an attorney failed to file an answer because he was required to leave his office for a time because of an accident to his son, and, when he returned, forgot the case because of accumulated work. It was held that this was excusable neglect on the part of the attorney and sufficient to justify the trial court in setting aside the default.

A much more extreme case is *Hallett* v. *Slaughter,* 22 Cal.2d 552 [140 P.2d 3]. This case did not involve a motion under section 473, which, of course, is made in the main action, but was an independent action in equity made to set aside a default judgment, which action was filed after the six-month period provided by section 473 had expired. There a defendant was served in the action and promptly notified his attorney. The attorney promptly prepared the answer. He and his secretary averred that the answer was mailed to the court, and a copy mailed to the attorney for plaintiff. Neither was received. The plaintiff entered defendant's default, but did not take judgment by default until after the six-month period had expired. The trial court set aside the default. The Supreme Court found that, while the attorney had been negligent in not sooner discovering that his answer had gone astray, whether such negligence was excusable or inexcusable was a question of fact. By a four-to-two vote (four-to-three on rehearing) it affirmed. In so holding, the court stated (p. 556) : ''We are in accord with the following views set forth in *Soule* v. *Bacon* (1907), 150 Cal. 495, 497-498 [89 P. 324] :

'There are many cases holding that the party may have relief in equity from the consequences of his mistake of fact, although he was somewhat negligent in making the mistake, if his negligence in no way prejudiced the opposing party. [Citations.] . . . At most, it was a question of fact for the court below to determine whether or not the lack of vigilance on the part of the plaintiff was such as would not have occurred with a man of ordinary care and prudence, under the same circumstances. That court has decided the question in favor of the plaintiff, and we are satisfied with its conclusion.' " (See criticism of the case in 31 Cal.L.Rev. 600.)

Of course, if such negligence on the part of the attorney will justify the granting of relief in an independent action in equity, it is more than sufficient in a proceeding under section 473.

The above cases deal primarily with situations where only negligence on the part of the attorney was involved, although the Hallett case looked with disfavor on the action of the opposing counsel in waiting six months after the default before having the judgment entered. ■ Of course, if opposing counsel are also at fault and prevent, directly or indirectly, a fair trial on the merits, such participation constitutes the type of fraud that will justify relief under the section. (*Gale* v. *Witt*, 31 Cal.2d 362 [188 P.2d 755] ; *Godfrey* v. *Godfrey*, 30 Cal.App.2d 370 [86 P.2d 357] ; see cases collected 15 Cal.Jur. p. 18, § 124; 31 Am.Jur. p. 241, § 671, et seq.)

The conversation set forth in the affidavit of Helen Dusio constituted a direct threat against that prospective witness. It certainly would have a tendency to prevent her from offering herself as a witness. While it is not averred that the witness did not testify because of fear, it is averred that because of the threat she had, and still has, an aversion to becoming a witness.

But, says appellant, respondent has failed to show the required diligence, in that the affidavits do not show why the evidence of Helen Dusio and the other witnesses was not discovered prior to trial. Such cases as *Weinberger* v. *Manning*, 50 Cal.App.2d 494 [123 P.2d 531] ; *Gill* v. *Peppin*, 41 Cal. App. 487 [182 P. 815] ; *Ross* v. *San Diego Glazed Cement Pipe Co.*, 50 Cal.App. 170 [194 P. 1059], and *Slemons* v. *Paterson*, 14 Cal.2d 612 [96 P.2d 125], are cited in support of this contention. Undoubtedly these cases support the rule that

relief will not be granted to one grossly careless of his own affairs.

This rule, however, is not here applicable as a matter of law. Here we have a case where the key question on the merits is whether appellant was respondent's agent or dealt with him at arm's length. According to the affidavits believed by the trial court there was very substantial evidence available to show that appellant was an agent, made the misrepresentations relied upon by respondent, and made a secret profit on the deal. Respondent convinced the trial court on the motion that he had a meritorious cause of action. The record upon the first trial, with which the trial court was entirely familiar, and which caused it to find that appellant was not an agent, is not before us. The trial court became convinced, upon reading the affidavits on the motion, that a miscarriage of justice had occurred, and that had this evidence been produced a different result would probably have occurred. This evidence was available at the time of the trial in the sense that the witnesses were physically present in the county of trial. But respondent's then counsel did not discover or produce that evidence. Standing alone, that would not warrant the granting of relief. But it does not stand alone.

 One basic witness has averred that appellant threatened her if she should testify, and that this caused her to have an aversion towards testifying. The trial court could reasonably infer that these threats were reasonably calculated to and did prevent this affiant from offering herself as a witness. This participation by appellant, which had a tendency to prevent a full trial on the merits, coupled with the negligence of respondent's counsel in failing to discover and to produce the evidence, support the order of the trial court vacating the judgment.

Appellant, for the first time in his reply brief, contends that all the affidavits are technically insufficient in that, in averring that appellant was the ''agent'' of respondent, they merely set forth incompetent conclusions. Of course, affidavits, if objected to, must state the facts and circumstances and must not allege mere conclusions. (See cases collected 2 Cal.Jur.2d 629, § 19.) The only affidavit to which objection was made was that of Helen Dusio. No objection was made to the other affidavits. Appellant is in no position now (and certainly not for the first time in a reply brief) to raise the question of the competency of these unobjected-to affidavits. It is elementary law that incompetent

statements in an affidavit become competent evidence when admitted without objection. This rule was stated as follows in *Falk* v. *Falk,* 48 Cal.App.2d 780, 789 [120 P.2d 724] : "The appellant contends that plaintiff's affidavit is incompetent evidence for the reason that it contains averments which are hearsay and which amount to mere conclusions. Even conceding that many of the averments of the affidavit are conclusions or hearsay, they become competent evidence for the reason that they were admitted without objection." (See, also, *Soares* v. *Ghisletta,* 1 Cal.App.2d 402 [36 P.2d 668] ; *Wright* v. *Mutz,* 61 Cal.App.2d 292 [142 P.2d 781] ; *Fallon* v. *Fallon,* 86 Cal.App.2d 872 [195 P.2d 878].)

The affidavit of Helen Dusio was objected to on the ground that the assertion that appellant was respondent's agent was a conclusion. This objection was properly overruled, even if it be conceded, without deciding, that the assertion of agency was a conclusion. That is so because the conduct of appellant, as disclosed in the facts set forth in the affidavit, clearly constituted an admission of agency. According to the affidavit, appellant started the conversation by warning the affiant that, if interrogated, she was to say nothing about the motel deal. When affiant replied that all she knew was that appellant had been respondent's agent, appellant, "in a loud and threatening manner," told her that that was what he did not want her to say, and if she knew "what's good for you, you'll keep your mouth shut." The introduction of the subject, the tone and threats made by appellant as disclosed by the affidavit, support the inference based on such conduct that appellant was seeking to suppress the testimony out of a consciousness of liability. This constituted an admission by conduct. (Examples of similar admissions by conduct are to be found in *People* v. *Mullen,* 115 Cal.App.2d 340 [252 P.2d 19] ; *Longuy* v. *La Societe Francaise,* 52 Cal.App. 370 [198 P. 1011] ; *People* v. *Chin Hane,* 108 Cal. 597 [41 P. 697].) Thus, all the affidavits were admissible and the averments contained therein relevant.

The other contentions of appellant are so lacking in merit that no further discussion is required.

The order appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.