[Civ. No. 16236. First Dist., Div. One. Feb. 15, 1955.]

FRANCIS STEPHENS, Respondent, v. BAKER AND BAKER ROOFING COMPANY et al., Appellants.

Ralph Leon Isaacs and Albert J. McGuire for Appellants.

Marshall E. Leahy and John F. O'Dea for Respondent.

BRAY, J.—Defendants appeal from (1) "Order Vacating and Setting Aside Order of Dismissal"* and (2) "Order Setting Aside Portion of Order of Dismissal."†

## QUESTION PRESENTED

Was there an abuse of discretion in making either order?

## RECORD

Plaintiff sued defendants for a money judgment and attached defendants' $1,200 bank account and $3,000 due defendants from one Capabianco. The latter intervened, offering to pay that amount into court. On stipulation of the parties it was deposited with the superior court clerk "pending the determination of the action . . ." After three years, the court released the attachment of the bank account, pursuant to section 542b, Code of Civil Procedure, which requires such release after three years. December 10, 1953, plaintiff filed "Notice of Motion to Advance on Trial Calendar" to be heard December 18th. December 16, 1953, more than three and three-quarters years after suit filed, defendant served and filed "Notice of Motion for Order Dismissing Action for Lack of Prosecution," to be heard two days later, December 18th (the same day that the motion to advance was to be heard). December 16th an order short-

*Hereafter referred to as the second order.

†Hereafter referred to as the first order.

ening time was made permitting the notice to be served any time prior to five o'clock of the same day. December 18th, the motion to dismiss, because of the engagements of the judge of that department, was continued to the following Monday, December 21st. December 18th, in the department of the presiding judge, the motion to advance was granted and the case set for trial for January 27, 1954. On December 21, 1953, the motion to dismiss was heard, taken under submission, and on December 23d an "Order Granting Motion Dismissing Action for Lack of Prosecution and Directing Payment of Money" was made and entered. This dismissed the action and ordered the $3,000 on deposit with the clerk to be returned to defendants.

December 24th a telegraphic notice of motion for an order setting aside the last mentioned order, to be heard December 28th, and stating that the notice and the setting of the hearing was pursuant to the personal direction of the judge who made that order, was received by defendants. This was followed on December 29th with a formal "Notice of Motion to Vacate and Set Aside Order of Dismissal" on the grounds set forth in section 473, Code of Civil Procedure, to be heard January 5, 1954. December 28, 1953, the judge who made the order of December 23d dismissing the action and returning the $3,000, made an "Order Setting Aside Portion of Order of Dismissal." This stated that that portion of the order of December 23d, ordering the return of the money, "was made through the inadvertence of Court, ex parte and without notice to plaintiff or counsel for plaintiff . . ." It set aside said portion of said order and ordered defendants to redeposit said moneys in court, to be held subject to the further order of the court.* January 5, 1954, the motion to vacate the order of dismissal was heard by a different judge than the one who made the order to dismiss and on January 22d an "Order Vacating and Setting Aside Order of Dismissal" was made.†

1. *Discretion—Second Order.*

The motion to set aside the order of dismissal was heard on conflicting affidavits, that of plaintiff's attorney O'Dea and that of defendants' attorney McGuire. O'Dea's affidavit recited that the complaint was filed March, 1950, and defendants' answer September 26th. October 6th plaintiff filed

---

*This is the "first order" from which appeal was taken.

†This is the "second order" from which appeal was taken.

memorandum to set the cause for trial. Defendants then filed demand for jury trial. The case was not called for setting until June 12, 1951. It was then set for trial on July 31st. June 28th defendants moved to inspect plaintiff's books to which plaintiff consented. At defendants' request the trial was continued by written stipulation to September 12th or such time thereafter as was convenient to the court. Defendants requested this continuance to take plaintiff's deposition. Plaintiff voluntarily appeared at defendants' attorney's office August 24th for that purpose. Plaintiff then requested that defendant Russell Baker be produced so that plaintiff might take his deposition. Defendants agreed. Defendants suggested that the deposition not be written up and no further expense incurred until settlement negotiations were exhausted. Plaintiff's deposition was not completed until approximately January 9, 1952. The affidavit then details negotiations for settlement, starting with defendants' offer of $2,250 prior to August 24th, an offer of $2,500 on that day, one of $3,000 on January 4, 1952, another of $3,500 on February 14th; "that it was the agreement and understanding of all parties and counsel that the matter would not be brought to trial as long as there was a possibility of settlement . . ." March 10th plaintiff's counsel notified defendants by letter that defendants' offers of settlement were not acceptable and asked when defendant Russell might be available for deposition. Prior requests had been made. It was not until April 29, 1953, that defendant Russell's deposition was taken. The deposition has never been signed despite defendants' counsel's agreement that it would be signed and despite requests made by the notary public. In September, 1952, plaintiff's counsel phoned defendants' counsel asking for a stipulation as to date of trial. The latter entreated that a trial not be had as the evidence produced would be favorable to Capabianco in a suit in the municipal court against plaintiff and defendants; that plaintiff acquiesced, until he could investigate the facts of that suit. Summons in it was served upon plaintiff, and in preparing plaintiff's defense, affiant determined that defendants' fears of the effect of evidence in the instant case on the Capabianco case were groundless; that in June 1953, affiant called defendants' counsel asking him to stipulate to a trial date; that defendants' counsel requested that the trial be deferred until a fall date as he was "heavily engrossed in preparations" for the annual convention of The State Bar.

To accommodate counsel affiant agreed. August 12th affiant wrote counsel that it was now apparent a settlement was not probable, and asked what date for trial would be agreeable. August 25th counsel answered, suggesting mid-November. On that day, by telephone, both counsel agreed on November 18th as the trial date, the case to be tried without a jury. September 1st affiant forwarded counsel a stipulation designating November 18th for trial, asking that it be signed and returned. Receiving no reply, affiant again wrote counsel reminding him of the stipulation, and suggesting that if the date was not satisfactory to advise affiant what date would meet counsel's convenience. November 4th, defendants' counsel by letter acknowledged receipt of plaintiff's letter and stated that the Capabianco case and this one should be tried together and therefore "steps are now being initiated for a consolidation of both of these actions to be tried at the same time. With kindest regards . . ." Failing to obtain the orally agreed stipulation, plaintiff filed the notice of motion to advance hereinbefore mentioned. Plaintiff on December 16th received the notice to dismiss set for December 18th. Defendants' counsel with whom plaintiff had dealt did not appear on the motion to advance but sent Attorney McGuire. After argument of counsel the motion to advance was granted and the case set for trial for January 26, 1954. Affiant appeared at the hearing of the motion to dismiss for the purpose of having the motion dropped off calendar, "assuming that the proceedings before the Honorable Presiding Judge had disposed of the matter; by reason of such assumption, by reason of the lack of time to prepare counteraffidavits, and sincerely believing that the motion to dismiss had been filed by counsel for defendants as a tactical move and that counsel for defendants having been the cause of the complained of delay, could not in good faith prosecute a motion to dismiss, affiant filed no affidavits in opposition to the motion to dismiss, however, to the surprise and shock of affiant, appearance was made by Albert J. McGuire, Esq. and the motion to dismiss was pressed; affiant attempted to orally set forth the matters herein recited but neither time nor the mental attitude of affiant permitted a proper presentation of these facts; [t]hat upon the hearing of the motion to dismiss Albert J. McGuire, Esq., represented to the Court that Charles Rickenbach had died 'a year and a half ago,' that he had been the principal witness for defendants and that by reason of the delay in prosecuting this action the testimony of

Rickenbach had been lost; the facts are that Rickenbach died so close to the date of filing of the complaint that he was never served and was never involved in any of these proceedings; . . ." Referring to the $3,000 then on deposit, affiant stated "that a dismissal of this action fails to make an equitable disposition of such funds but facilitates the unjust enrichment of the defendants at the expense of materialmen who furnished the material for the jobs . . ."

In opposition, there is no affidavit by the defendants' counsel who dealt with plaintiff's counsel nor any denial of the matters in plaintiff's counsel's affidavit. The only affidavits were those of defendants' counsel filed with the notice of motion to dismiss and that of the counsel who appeared for defendants on that motion. The first affidavit alleges the bald conclusion that plaintiff had failed to prosecute the action and had not acted with due diligence. It alleged that nothing had been done to bring the case to trial since August, 1951. It alleged in effect that because of plaintiff's lack of diligence, defendants would be unable to present their defense due to the death of one Charles Rickenbach. (It is significant that the affidavit does not state when he died. Plaintiff's affidavit that he died close to the filing of the suit is nowhere denied.) Practically all the other matters alleged in this affidavit are matters of record which could not be denied but which in nowise negative the allegations of plaintiff's later affidavit showing the reasons for delay. The affidavit of the second attorney states that he appeared in opposition to the motion to advance and gave as his grounds the pending of the motion to dismiss, requested the deferring of the motion to advance until the motion to dismiss had been heard, that on the hearing of the motion to dismiss he pointed out that plaintiff had filed no affidavit in answer to defendants' affidavit accompanying the notice of motion to dismiss, and that plaintiff did not request an opportunity to file counteraffidavits. It is obvious that were the facts as to the delay in bringing the action to trial as set forth in plaintiff's affidavit on the motion to vacate, and not denied, fully before the court on the motion to dismiss, the court would not have dismissed the action. ". . . when there have been mutual bona fide efforts to compromise and the plaintiff has delayed bringing the action to trial because of a reasonable belief, induced by the nature of the negotiations, that a trial could probably be avoided, it would be an abuse of discretion to dismiss the action."

(*Cameron* v. *Cameron,* 110 Cal.App.2d 258, 261 [242 P.2d 408].) Defendants' position here is a very technical one, namely, that because plaintiff on the motion to vacate did not make the showing he could have made, or did not ask for a continuance to do so, the court had no right to vacate the order. This failure, say defendants, was a mistake of plaintiff's attorney for which plaintiff has no redress; therefore, as a matter of law plaintiff cannot bring himself within the provisions of section 473, Code of Civil Procedure.

We do not agree with defendants' contentions. ██ The very purpose of section 473 is to give a party the opportunity of repairing the damage done because of his failure or that of his counsel to make the showing he could have made, provided, of course, that that failure is due either to mistake, inadvertence, surprise or excusable neglect. There was such situation here. ██ It should be pointed out, too, that the undenied fact is that most of the delay in bringing the case to trial was due to plaintiff's acquiescence in defendants' requests and that while defendants' affidavit upon which the court apparently acted in dismissing the case, stated that plaintiff was not diligent, the correspondence between the maker of the affidavit and plaintiff's counsel in the latter half of 1953 belied that statement. Moreover, defendants were not fair with the court in drawing the affidavit in such a way that it is made to appear, without saying so, that a witness who died about the time the suit was filed died a long time thereafter. It definitely is made to appear in the affidavit that defendants' inability to use that witness was due to plaintiff's delay in bringing the case to trial.

While plaintiff could have, and should have, asked time on the motion to dismiss to prepare proper affidavits, nevertheless, in view of the history of the case, the negotiations between counsel, the writings and all the circumstances of the case and the inadvertence of plaintiff's counsel, it clearly appears that the order of dismissal was granted by the judge through the mistake, surprise, inadvertence and excusable neglect of plaintiff's counsel, and therefore plaintiff was entitled to have his day in court on the merits. As the court said in *O'Brien* v. *Leach,* 139 Cal. 220, 222 [72 P. 1004, 96 Am.St.Rep. 105], ''In matters of this sort the proper decision of the case rests almost entirely in the discretion of the court below, and this court will rarely interfere, and never unless it clearly appears that there has been a plain abuse of discretion. This court will usually sustain the

action of the court below upon the same facts, whether that decision is for or against the motion; but it is much more disposed to affirm an order when the result is to compel a trial upon the merits than it is when the judgment by default is allowed to stand, and it appears that a substantial defense could be made. This will explain what would otherwise seem to be a conflict in the decisions." (See also *Dineen* v. *San Francisco*, 38 Cal.App.2d 486 [101 P.2d 736].) Even "negligence on the part of the attorney will, under some circumstances, justify the trial court in granting relief." (*Vartanian* v. *Croll*, 117 Cal.App.2d 639, 645 [256 P.2d 1022]. See cases there discussed. Also see *Stub* v. *Harrison*, 35 Cal.App.2d 685 [96 P.2d 979], where the attorney failed to file an answer because he "forgot the case because of accumulated work" when he returned to his office after an accident to his son.)

There are many cases in California dealing with the granting or the denial of relief under section 473. It is well settled that a motion under that section is "addressed to the sound discretion of the trial court. Its determination will not be disturbed in the absence of a clear showing that this discretion has been abused. (See for a good statement of the rule, *Beard* v. *Beard*, 16 Cal.2d 645 [107 P.2d 385].)" (*Vartanian* v. *Croll, supra*, 117 Cal.App.2d 639, 644.) In many instances the facts might justify either a granting of the motion or a denial of it, in which event the reviewing court invariably sustains the action of the lower court. For that reason cases upholding denials, many of which are cited by defendant, are not determinative of the question here. As said in the Vartanian case, *supra*, p. 644: "There are relatively few reversals in this field. Of course, where there has been the entry of a default and the trial court sets it aside the appellate courts seldom reverse because of the strong public policy favoring trials on their merits."

The following language from *Proulx* v. *De Moti*, 106 Cal. App.2d 265 [234 P.2d 1009], is particularly applicable to the situation here (p. 269): "The action or inaction of plaintiffs' attorney, criticized by appellant as constituting nonexcusable neglect, must be considered in the light of the entire circumstances shown by the record. Whether the neglect was, in the circumstances, excusable, was a question addressed primarily, and indeed, almost entirely, to the discretion of the court below. Moreover, in the consideration of an application for relief under section 473 of the Code of

Civil Procedure, the law favors such action as will result in a trial on the merits." "It is only in extreme cases that an appellate court will interfere with the action of a trial court in refusing or granting an order of this character . . ." (*Hecq* v. *Conner*, 203 Cal. 504, 509 [265 P. 180].) "Any doubt that may exist should be resolved in favor of the application *to the end of securing a trial upon the merits.*" (*Jergins* v. *Schenck,* 162 Cal. 747, 748 [124 P. 426]; emphasis added. See also *Garcia* v. *Garcia,* 105 Cal.App.2d 289, 291 [233 P.2d 23]; *Proulx* v. *De Moti, supra,* 106 Cal.App.2d 265, 270.)

Nor is the fact that the motion to vacate was heard by a judge other than the one who heard the motion to dismiss significant. A reading of the affidavits on the motion to vacate shows conclusively that the true facts were not present before the first judge due to the emotional distress, surprise and inadvertence of plaintiff's counsel.

 Defendants' contention that as the order of dismissal is an appealable one, and no appeal was taken, no other relief can be obtained is answered by *Harth* v. *Ten Eyck,* 16 Cal.2d 829, 832 [108 P.2d 675]: "It is argued by the defendant Olinger that since said order was appealable the power of the court was exhausted when it denied the motion to set aside the order of April 18th dismissing Olinger from the case. But the fact that the order of dismissal was appealable would not make an appeal therefrom the exclusive method of attacking it. The trial court on a proper motion, timely made, could set it aside.

"That the court had jurisdiction to entertain the motion under section 473 of the Code of Civil Procedure may not successfully be questioned."

2. *The First Order.*

 Five days after making the order of dismissal the judge who made it signed an order, of his own motion, setting aside the portion returning the $3,000 to defendants, stating that that portion "was made through the inadvertence of Court, ex parte and without notice to plaintiff or counsel for plaintiff . . ." Defendants point out that as to the $3,000, the court at the time of the dismissal had the power to do one of three things: (1) order payment to defendants; (2) as in *Lord* v. *Superior Court,* 27 Cal.2d 855 [168 P.2d 14], retain the fund to await disposition thereof; and (3) do nothing about it, leaving its disposal to

be determined in another action. Having followed the first course, defendants say the court lost jurisdiction to do anything more. ▮ This would be true, if the order were not inadvertently made. If so made it is an inherent power of the court that it can correct the inadvertence. (*Burbank* v. *Continental Life Ins. Co.*, 2 Cal.App.2d 664, 667 [38 P.2d 451]; *Robson* v. *Superior Court*, 171 Cal. 588, 593 [154 P. 8].) Moreover, section 937, Code of Civil Procedure, provides: "An order made out of court, without notice to the adverse party, may be vacated or modified, without notice . . ." ▮ While the recital in the order that it was made through inadvertence, etc., is not conclusive of that fact (*Triplett* v. *Superior Court*, 57 Cal.App.2d 536, 541 [135 P.2d 4]), no showing is made here that the recital is not true. There was nothing in defendants' notice of motion to dismiss which indicated that defendants were going to ask for disposition of the fund in addition to a dismissal. While defendants' affidavit shows the motion to dismiss was argued, it does not indicate that there was any discussion of the disposition of the fund. As we must presume the regularity of the trial court's actions, in the absence of evidence to the contrary, we are bound by its statement that the order was inadvertently made and without notice. It should be pointed out that even though the court erred in making this order (which we hold it did not) and we should reverse the order, such action would be of no benefit to defendants for the reason that we have held that the court properly set aside the dismissal order which this latter order modifies.

The orders are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.