[Civ. No. 19910. Second Dist., Div. Three. Jan. 26, 1954.]

CHARLES M. HOVER, Respondent, v. KATHLEEN MacKENZIE et al., Appellants.

George Boshae for Appellants.

Paul Shapiro for Respondent.

VALLÉE, J.—Appeal by defendants and cross-complainants from: (1) an order granting plaintiff and cross-defendant's motion for reconsideration of the denial of a motion to

vacate and set aside a judgment; (2) an order setting aside and vacating an order denying a motion of plaintiff and cross-defendant to vacate and set aside a judgment; (3) an order setting aside and vacating the default of plaintiff and cross-defendant and a judgment.

Plaintiff filed the action, apparently to quiet title. The complaint is not a part of the record. Defendants filed a cross-complaint naming plaintiff as cross-defendant in which they sought a decree quieting their title to a parcel of realty. Plaintiff answered the cross-complaint. The cause was set for trial. Notice of trial was given by the attorney for plaintiff to the attorney for defendants. Neither plaintiff nor his attorney appeared on the day of trial. The cause was then tried on the cross-complaint as a default; and on December 29, 1952, a judgment was rendered and entered quieting defendants' title to the realty.

On March 12, 1953, plaintiff filed a notice of motion, supported by affidavits, to vacate and set aside the judgment of December 29, 1952, on the grounds of mistake, inadvertence, excusable neglect, and that no findings of fact or conclusions of law had been served or filed. This motion was denied on March 25, 1953.

On March 31, 1953, plaintiff filed a notice of motion, supported by the affidavits previously filed and additional affidavits, to reconsider the order of March 25, 1953. On April 22, 1953, this motion was granted; an order was made vacating and setting aside the order of March 25, 1953; and an order was made vacating and setting aside the default of plaintiff and the judgment of December 29, 1952.

Defendants appeal from the orders made on April 22, 1953. They claim the court abused its discretion in making them. The claim is without merit.

The affidavits made by plaintiff stated: At the time the complaint was filed, William Stein was his attorney. Stein wrote a letter notifying him of the date of trial. He lost or mislaid the letter, did not remember the date of trial, and was under the impression the case would be tried in the spring of 1953. He does not remember when he lost or mislaid the letter for the reason that he did not have any occasion to again look at the date of trial. He became dissatisfied with Stein and about March 6, 1953, retained Paul Shapiro as his attorney in the action. He did not remember Stein's first name, and did not ascertain it until about March 9, 1953. He asked Shapiro to call Stein. Shapiro called one Louis

Stein and was informed he had not represented plaintiff. Shapiro then called William Stein and was informed that the case had been set for trial for December 29, 1952, and that he did not know what had happened to it. Shapiro telephoned the county clerk, verified the date of trial, and learned that judgment had been rendered against plaintiff for the reason he was not present at the trial. Thereupon he instructed Shapiro to procure a substitution of attorneys and file a motion to set aside the judgment. Stein told Shapiro he had written plaintiff informing him of the date of trial and had telephoned plaintiff's niece asking her to inform plaintiff of the date of trial. His niece did not notify him of the date of trial. His failure to appear at the time of trial was due to his excusable neglect, oversight, inadvertence, mistake, and surprise. He stated all the facts in the case to Shapiro and was informed by him that he has a meritorious cause of action against defendants. About August 3, 1949, being 60 years of age, unmarried, lonesome, and without friends, upon the urging of defendants he conveyed to them his only piece of real estate upon the promise that they would give him shelter for the remainder of his life, would support him, and pay his medical and hospital bills. He also transferred some furniture to defendants. At the time he made the conveyance he had no other real or personal property except a vacant lot in Ohio worth $100. As soon as he conveyed the property to defendants they did not want him around. He thereupon moved from defendants' residence. On November 15, 1951, he requested defendants to be permitted to move in and live with them. They refused. There was no consideration for the conveyance. The promises made to him were not made in good faith.

An affidavit of plaintiff's niece stated: Stein called her on the telephone and asked her to call plaintiff and notify him of the date of trial; she forgot to inform him.

An affidavit of plaintiff's present attorney stated: Plaintiff retained him about March 6, 1953, and told him that a Mr. Stein who had offices on Spring Street had represented him. He looked through the attorneys' directory and found a number of Steins. William Stein told him the matters related in the affidavits of plaintiff.

Affidavits of defendant Kathleen MacKenzie and defendants' attorney were filed in opposition to the motion. As far as material, they stated: Defendants' attorney subpoenaed five witnesses for the trial. It was extremely difficult to locate

three of them, and the other two were reluctant to attend the trial because of loss of employment. The whereabouts of these witnesses "are doubtful," and the possibility of serving a subpoena on all of them is highly questionable. Stein did not, between the time the cause was set for trial and the date of trial, contact him (defendants' attorney) about a continuance. He and defendants were ready for trial on the date set. Stein did not appear. The presiding judge asked him (defendants' attorney) to telephone Stein. He did. He asked Stein what he was going to do. Stein replied, "Nothing"; he was not going to appear. He told Stein he was going ahead "on the cross-complaint, as a default." Stein replied, "Go ahead and do what you want."

█ Code of Civil Procedure, section 473, providing that a trial court may relieve a party from "a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect," is remedial in its nature and is to be liberally construed. (*Friedrich* v. *Roland*, 95 Cal.App.2d 543, 552 [213 P.2d 423].) █ The policy of the law is to have every litigated cause tried on its merits; and it looks with disfavor on a party who, regardless of the merits of his cause, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. (14 Cal.Jur. 1075, § 116.) █ Reviewing courts have always looked with favor on orders excusing defaults and permitting controversies to be heard on their merits. Such orders are rarely reversed, and never unless it clearly appears that there has been a plain abuse of discretion. (*Jones* v. *Title Guaranty etc. Co.*, 178 Cal. 375, 376-377 [173 P. 586].) █ Even in a case where the showing under section 473 of the Code of Civil Procedure is not strong, or where there is any doubt as to the setting aside of a default, such doubt should be resolved in favor of the application. (*Garcia* v. *Garcia*, 105 Cal.App.2d 289, 291 [233 P.2d 23].) █ All presumptions will be indulged in favor of the correctness of the order, and the burden is on the appellant to show that the court's discretion was abused. (*Estate of McCarthy*, 23 Cal.App.2d 398, 400 [73 P.2d 914].)

. █ In *Baratti* v. *Baratti*, 109 Cal.App.2d 917, we said (p. 921 [242 P.2d 22]): "Inadvertence is defined as lack of heedfulness or attentiveness, inattention, fault from negligence. (Webster's New Inter. Dict., 2d ed.; *Greene* v. *Montana Brewing Co.*, 32 Mont. 102 [79 P. 693, 694].) . . . The 'excusable neglect' referred to in the section [Code Civ.

Proc., § 473] is that neglect which might have been the act of a reasonably prudent person under the same circumstances. (*Elms* v. *Elms,* 72 Cal.App.2d 508, 513 [164 P.2d 936].)''

 The court was warranted in concluding from the record before it that the default of plaintiff was taken as a result of his inadvertence, that his neglect was such as might have been the omission of a reasonably prudent person under the same circumstances, and that it was therefore excusable.

 Defendants argue that the court having once denied the motion to vacate the default and the judgment should not have thereafter granted it. There is no impropriety or error in a judge reversing himself if he later concludes he was wrong the first time. He would stultify himself if he did otherwise. The motion to reconsider was in effect a renewal of the motion to vacate and set aside the default and the judgment. The court had the power to make the orders appealed from. (*Harth* v. *Ten Eyck,* 16 Cal.2d 829 [108 P.2d 675].)

The orders appealed from are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied February 2, 1954, and appellant's petition for a hearing by the Supreme Court was denied March 25, 1954.