[Civ. No. 22567.   Second Dist., Div. Three.   May 7, 1958.]

RICHARD J. BICE et al., Appellants, v. JAMES STEVENS et al., Respondents.

Donald P. Lane and Lane & Lane for Appellants.

Dolley, Jessen & Painter, Louis Miller and Harry E. Templeton for Respondents.

VALLÉE, J.—Plaintiffs have appealed from two orders denying their motions made under section 473 of the Code of Civil Procedure: one motion for an order setting aside a judgment of dismissal with prejudice as to one defendant and for other relief, the other motion for an order setting aside in part and amending the judgment of dismissal.

The action was commenced on November 9, 1949, by plaintiffs for damages for fraud in the exchange of real properties. The cause went to trial; defendants' objections to the introduction of evidence were sustained; and judgment for defendants entered. On plaintiffs' appeal the judgment was reversed as to all defendants except a bank. (*Bice* v. *Stevens,* 136 Cal.App.2d 368 [289 P.2d 95].)

William F. Thompson, one of the defendants, died prior to the reversal. His estate was in probate in the Superior Court of the City and County of San Francisco. Homer A. Thompson was the duly appointed administrator of the estate. Mr. Emory Morris of San Francisco was one of the attorneys for the administrator. The administrator had not been substituted as a defendant in place of the deceased.

The cause was again set for trial for May 7, 1956, in Department A. When it was called, Mr. Poppler, attorney for plaintiffs, answered "Ready" and stated he was dismissing with prejudice as to "defendant William F. Thompson and his heirs and administrator." Thereupon the court dismissed the action as to "William F. Thompson and administrators" and transferred the cause for trial to Department D.

In Department D, at the suggestion of the court, plaintiffs amended the complaint to allege damages of $58,200. The remaining defendants then moved for permission to amend their answers to plead a defense of retraxit. The motions

were granted and the trial was reset for September 24, 1956. The answers were amended accordingly.

On June 22, 1956, plaintiffs filed a motion for an order setting aside the judgment of dismissal with prejudice and for a further order permitting plaintiffs to proceed against the remaining defendants; in the alternative, to amend the motion for dismissal with prejudice to exclude acceptance of any consideration for the dismissal. The grounds of the motion were that the motion for dismissal with prejudice was made by mistake, inadvertence, excusable neglect, and without authority from the plaintiffs. The motion was denied on July 26, 1956. The court then granted motions of defendants for trial on the special defenses of retraxit and reset the cause for trial for January 7, 1957.

On September 13, 1956, plaintiffs filed a second motion for an order setting aside in part and amending the judgment of dismissal so that the words "with prejudice" were stricken therefrom and the words "without prejudice" substituted therefor. The grounds of the motion were mistake, mistake of law, surprise, inadvertence, excusable neglect, and want of any authority from plaintiffs. This motion was denied on October 18, 1956.

On December 12, 1956, plaintiffs filed a single document in which they appealed from the order of July 26, 1956, denying their first motion, and from the order of October 18, 1956, denying their second motion.

The order of July 26, 1956, denying the first motion was appealable. (3 Witkin, California Procedure, 2172, § 26.) The appeal from that order was not filed within 60 days from the date of entry of the order. This court is without jurisdiction of that appeal and it must be dismissed. (Rules on Appeal, rule 2.)

Defendants assert the order of October 18, 1956, denying the second motion is not appealable because that motion, they say, is substantially a repetition of the first motion to vacate and is based on grounds which were in existence and considered by the trial court in ruling on the first motion.

The former general rule permitted only one motion under section 473 of the Code of Civil Procedure, and once the court ruled on such motion its power with respect to the judgment ceased. The basis for the rule was that to permit a renewal after a previous denial would result in uncertainty as to the status of the judgment; that if a trial court could vacate one denial, why not a second, a third, ad infinitum? It was said

that in the interests of expeditious handling of litigation there should be a definite limitation on the power of the trial court to set aside its own orders. (See cases collected 30 Cal.L.Rev. 74.) ■ However, the rule fell with *Harth* v. *Ten Eyck*, 16 Cal.2d 829 [108 P.2d 675], in which the court held, on facts similar to those at bar, that where the trial court considered a second motion under section 473 to set aside a dismissal with prejudice as to one defendant as a renewal of the motion to set aside its previous order of denial, the order granting the second motion was tantamount to permission to renew the motion to set aside, and it was appealable. (Also see *Harth* v. *Ten Eyck*, 12 Cal.2d 709 [87 P.2d 693]; *Imperial Beverage Co.* v. *Superior Court*, 24 Cal.2d 627, 634 [150 P.2d 881]; *Beyerbach* v. *Juno Oil Co.*, 42 Cal.2d 11, 29 [265 P.2d 1]; *Hover* v. *Mac-Kenzie*, 122 Cal.App.2d 852, 857 [266 P.2d 60]; *Stephens* v. *Baker & Baker Roofing Co.*, 130 Cal.App.2d 765, 773 [280 P.2d 39]; *Dahlin* v. *Moon*, 141 Cal.App.2d 1, 4 [296 P.2d 344].) ■ We hold the order of October 18, 1956, denying the second motion is appealable.

The question is: Did the court abuse its discretion in denying the second motion? This motion was supported by affidavits of plaintiffs. The parties stipulated that the affidavits and depositions of plaintiffs and their attorneys filed in connection with the first motion could be used and introduced in evidence and considered by the court in ruling on the second motion. The entire file, together with all affidavits and depositions, was received in evidence at the hearing.

The trial was originally set for May 7, 1956. On April 13, 1956, Mr. Morris wrote Mr. Poppler, one of plaintiffs' then attorneys, that he was unable to obtain any information concerning the litigation; that the net estate of the decedent Thompson was nominal; that there were two alternatives facing the administrator: either the estate used up its assets in defending the action or to request a covenant not to sue from plaintiffs; and that the action could not go to trial until the administrator had been substituted. On May 4 Mr. Morris, not having heard from Mr. Poppler, telephoned him and arranged to meet him on May 5.

On May 5 Mr. Morris met with Mr. Poppler. Mr. Morris asked for a complete clearance of the estate either by a covenant not to sue or by a dismissal with prejudice. Mr. Poppler stated that for a payment of $25 a dismissal with prejudice would be entered on May 7 when the case was called for trial. Mr. Morris accepted the offer and gave Mr. Poppler $25 in

cash. Mr. Poppler gave Mr. Morris a writing dated May 5, 1956 stating, ''This note is to assure you that, in consideration for $25.00, I will cause to have my clients file a dismissal with prejudice as to William F. Thompson Deceased and his heirs and representatives in the case of Bice v. Stevens LBC 16190 when the same is called for trial Monday, May 7, 1956 in Dep't Long Beach A,'' and acknowledged receipt of the $25. Plaintiffs were not present at the meeting between Mr. Poppler and Mr. Morris.

On May 7, when the action was called for trial in Department A, in response to a question by the court as to whether it was at issue, Mr. Poppler informed the court that it was at issue and that he was dismissing as to defendant William F. Thompson and his administrator and heirs with prejudice. The motion was granted. Mr. Poppler then stated to the court that his associate advised him they should dismiss without prejudice. The court asked if there was any objection, to which one of counsel for defendants said ''Yes'' and that he desired to be heard. The court then stated: ''You have already made the motion, Mr. Poppler, and I have granted the motion; and I can't take time now to hear anything further. All right, you are transferred to Department D.''

The plaintiffs in the action are Richard J. Bice and Leila M. Bice. The attorneys for the plaintiffs were Mr. Poppler and Mr. Duke.[1] Plaintiff Leila M. Bice, in an affidavit filed in support of the motion (this affidavit was filed in connection with the first motion), stated that at the time the motion was made she was not present in the courtroom of Department A but was proceeding directly to Department D where she had been informed by counsel the trial of her case would be held; at no time whatsoever did she authorize either Mr. Poppler or Mr. Duke to dismiss as to any defendant with prejudice; at no time did she authorize either of her counsel to dismiss, compromise, or settle the action with any defendant for any sum; neither she nor Mr. Bice ever authorized the acceptance of any cash or check or draft or other negotiable instrument in settlement; neither she nor Mr. Bice at any time entertained any thought or expressed any intention or desire to compromise or settle the action in which they are justly entitled to more than $60,000, the same representing, among other things, the loss of their life savings in the form of their equity in a

[1]Present counsel for plaintiffs were substituted after the appeal was taken.

motel property. In a second affidavit (this affidavit was filed in connection with the second motion) Mrs. Bice stated that at no time did she or Mr. Bice receive, authorize the receipt of, or accept any consideration by way of compromise and release as to Thompson or any of the defendants; she did not on or before May 7, 1956, and still does not understand the meaning or legal effect of a dismissal with prejudice, and when Mr. Poppler endeavored to explain to her that she and Mr. Bice would have to give a covenant not to sue as to the Thompson estate and let it out of the action, she and Mr. Bice did not have any idea that anything was going to be done that would effect a surrender or loss of their substantial rights against the remaining defendants; she gave Mr. Poppler only limited authority and special instruction to do whatever was necessary to protect their long-delayed trial date and to do everything proper to enable her and Mr. Bice to proceed to trial.

In her deposition which was taken on July 13, 1956, by defendants Mrs. Bice testified: ''Q. My question is did either Mr. Duke or Mr. Poppler tell you after they saw you in Department D that Judge Pierson would do nothing about changing the dismissal, in substance or effect? A. Mr. Poppler told me he had made a mistake but he didn't tell me anything about Judge Pierson. Q. What did Mr. Poppler tell you about making a mistake? A. That he had asked for a dismissal with prejudice and didn't mean to do so. Q. Did he say what he meant to ask for? A. No, because I didn't understand it. I didn't understand what this dismissal with prejudice meant. Q. What did you say when Mr. Poppler told you he had made a mistake? A. I was angry. Q. What did you say, please? A. I told him he had no authority to ask for a dismissal with prejudice. Q. The question is now when Mr. Poppler told you he had made a mistake, what did you say? A. I said, 'You had no authority to ask for a dismissal with prejudice.' Q. Then what did Mr. Poppler say? A. I don't remember what he said. I know he felt very badly about it. Q. Then did you say anything further? A. Well, at no time had we ever told him to compromise or settle in any manner with any of the defendants. Q. My question, Mrs. Bice, is did you say anything further to him regarding the subject of his mistake or correcting the mistake? A. Nothing about correcting it. Q. Did Mr. Poppler tell you that his mistake consisted in asking for a dismissal with prejudice when he should have asked for a dismissal? A. He

may have. I don't remember. Q. Didn't Mr. Poppler tell you that the reason why he dismissed the case was that Mr. Morris was resisting any attempts to continue the action against the estate? A. He tried to explain that part to me, but I didn't understand it very well. Q. Well, didn't you tell Mr. Poppler to do whatever he felt was necessary in order to overcome that resistance? A. Yes. . . . Q. Now, isn't it a fact, Mrs. Bice, that prior to May 7th you did discuss with Attorney Poppler or with Mr. Duke the dismissal of the action in addition to the Covenant Not to Sue as to the estate of Thompson? A. Yes. Q. When did that take place? A. With Mr. Poppler it was May 5th. Q. It was May 5th with Mr. Poppler and you understood then that in addition to the Covenant Not to Sue that there would be just a plain dismissal and not a dismissal with prejudice as to the estate of Thompson? A. We didn't understand it that we were going to ask for a dismissal. Q. Now, you told me just a moment ago that you discussed it. A. We discussed it, yes. Q. You discussed with Mr. Poppler that in addition to the Covenant Not to Sue that you would dismiss as to the estate of Thompson? A. Well, it was my understanding that it meant about the same thing. Q. In other words you didn't understand it but that was what was said? A. Yes. . . . Q. Now, you state there that the principal reason for dismissing as to the estate and executing the Covenant Not to Sue was to prevent further delay. What is the basis of that allegation, then? A. We wanted to have him do whatever was necessary so that we could go to trial. Q. In other words, this matter had been delayed already some seven years? A. Yes. Q. And you left the procedure of the trial to Mr. Poppler? A. Yes. Q. And you had confidence in his ability? A. Yes. Q. And you told him to do what he thought was necessary so that you could go to trial? A. Yes.''

An affidavit of Richard J. Bice (this affidavit was filed in connection with the first motion) stated the same facts as stated in the first affidavit of Mrs. Bice. In a second affidavit (this affidavit was filed in connection with the second motion) Mr. Bice stated that at no time prior to the afternoon of May 7 did he have any conversation with either of his attorneys relative to the covenant not to sue or relative to a dismissal as to the Thompson estate; he left the conduct of the litigation up to Mrs. Bice and was not present at the home of Mr. Poppler on May 5 at the time when, he is informed, his wife and Mr. Poppler had some conversation relating to

the problem of the Thompson estate; at no time did he directly or indirectly, expressly or impliedly, authorize either of his attorneys to do anything such as to dismiss with prejudice which would effect the surrender or loss of his substantial rights or have the legal effect of abandoning his entire cause of action. In other respects the second affidavit of Mr. Bice is the same as the second affidavit of Mrs. Bice.

In his deposition taken on July 13, 1956, by defendants Mr. Bice testified: ''Q. Well, didn't you understand from Mrs. Bice or from Mr. Duke or from Mr. Poppler that there was a problem as to whether you would be able to get to trial on Monday? A. No. Q. Hadn't Mr. Poppler or Mrs. Bice or Mr. Duke previously told you that the Thompson estate was going to oppose the trial going on Monday because of certain technical reasons? A. Mrs. Bice talked something about that but I didn't quite understand what it was. Q. What did Mrs. Bice tell you about that? A. Sunday, May 6th? Q. I mean on or before May 5th, did Mrs. Bice tell you something about there being a problem or question as to whether you would be able to go on for trial on Monday because of the Thompson estate? A. Not that I remember. Q. All right. Now, then, on Sunday did Mrs. Bice tell you something about the trial going on on May the 7th? A. She said that she thought we was going to do that, that everything was all right. Q. What did she say about that? A. She talked about the Covenant Not to Sue and said everything was all right, that we was going to go on trial Monday. We had made arrangements to be there. Q. That was the first time you ever heard the words 'Covenant Not to Sue', wasn't it? A. I think so. Q. You never heard those words before? A. No. Q. Except when Mrs. Bice told you that on Sunday? A. Yes. . . . Q. Now, it is true, isn't it, that you left the handling of this case to Mrs. Bice? A. In a way, yes. Q. Well, what do you mean, in a way? A. Well, she done most of the talking. Q. The decisions that had to be made were to be made by her? A. Yes. Q. And you were willing, weren't you, that Mr. Poppler do whatever was necessary to protect your rights? A. Yes. Q. And you were willing that he should do whatever he felt was necessary? A. Yes. to hold Thompson in. . . . Q. Did you ever tell Mr. Poppler not to dismiss this action as to Mr. Thompson or his estate or representatives? A. Yes I told my wife to tell him that day the 6th. Q. Did you ever tell Mr. Duke not to dismiss this action as to Mr. Thompson? A. No. Q. Or the estate or his heirs or repre-

sentatives? A. No. Q. What is your answer, please? A. No. . . . Q. Mr. Bice, on the 5th day of May when you arrived over at the Poppler residence, you found Mrs. Bice there, did you? A. Yes. Q. Did Mrs. Bice at that time tell you that the matter had been settled with respect to the Thompson estate so that the case could go to trial on the 7th? A. No. Q. Did she tell you that on the 6th that they had made the settlement and were going to execute the Covenant Not To Sue? A. It was on the 6th. Q. That was on the 6th that she told you that? A. Yes. Q. And it was your understanding then by virtue of the settlement with the Thompson estate that the matter would be able to proceed to trial on Monday? A. Yes. with this covenant not to sue. . . . Q. Now, Mr. Bice, are you hard of hearing? A. A little bit, yes. . . . Q. I believe Mr Miller asked you if you were willing to let Mr. Poppler do what he thought was necessary to handle your case and you answered 'Yes.' Now, were you willing to let Mr. Poppler dismiss your case entirely? A. No. Q. Now, I believe you also stated to Mr. Miller that you never told Mr. Poppler not to dismiss as to the Thompson estate. Did you ever tell Mr. Poppler to dismiss as to Mr. Thompson? A. No. I don't remember ever telling him that.''

An affidavit of Mr. Poppler stated he made the motion to dismiss with prejudice on May 7, 1956, without any authority from his clients so to do; he did not intend to purport to accomplish a retraxit; he had tendered the return of the $25 to Mr. Morris; and his clients have never received anything by way of consideration from the estate of Thompson, the administrator thereof, or the attorney for the administrator.

An affidavit of Mr. Duke stated that at no time did he have authority from either plaintiff to settle, compromise, dismiss, or release the action; that when the case was called on May 7, to his astonishment Mr. Poppler moved to dismiss with prejudice; he immediately protested to Mr. Poppler and told him the dismissal should be without prejudice but before Mr. Poppler corrected the motion the court granted it.

The rule is almost universal that an attorney who is clothed with no other authority than that arising from his employment in that capacity has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action. (Anno: 30 A.L.R.2d 945.) An attorney does not, without specific authorization, possess the power or authority to bind his client to a compromise settle-

232

ment of pending litigation. (*Anderson* v. *Joseph*, 146 Cal. App.2d 450, 454 [303 P.2d 1053].) ■ Without his client's free and intelligent consent, after full knowledge of all the facts and circumstances, an attorney may not surrender any substantial right of his client; nor may he impair, compromise, or destroy his client's cause of action. (*People* v. *Davis*, 48 Cal.2d 241, 256 [309 P.2d 1].)

■ "With reference to an attorney's authority to dismiss his client's action with prejudice it is said: 'An important problem is related to the distinction between voluntary dismissals or nonsuits which are without prejudice to the cause of action, and dismissals or nonsuits with prejudice, the last mentioned type being referred to in the cases by the common-law term "retraxit." It is clearly within the attorney's authority to dismiss the client's action without prejudice. However, a series of early cases held the general authority of an attorney even sufficient to empower him to effect a retraxit, amounting to a renunciation of the client's substantive right or cause of action. It is hardly possible to reconcile this rule with the established principle that the implied general authority of an attorney does not include any power or authority to dispose of the client's substantive rights, and it would therefore seem doubtful whether, or to what extent, the early cases would now be followed.' [Citation.] ■ And further in that connection: 'In civil litigation, the attorney, as the client's agent, and in the absence of fraud, has authority to bind his client in all matters pertaining to the regular conduct of a case. . . . In the absence of such special instructions, the conduct and management of the action is entrusted to the attorney's judgment; he decides what should be contested, what points should be taken, and what should be abandoned. This authority is, however, subject to the qualification that an attorney ordinarily does not have implied authority to do an act which will effect the surrender or loss of a client's substantial rights, for the client determines "the objectives to be attended." ' " (*Gagnon Co., Inc.* v. *Nevada Desert Inn, Inc.*, 45 Cal.2d 448, 459 [289 P.2d 466].)

■ "While procedural matters are generally within the control of the attorney, the cause of action or the subject matter of the litigation is within the control of the client, and an attorney may not impair, compromise, settle, surrender, or destroy it without his client's consent." (6 Cal.Jur.2d 341, § 156.)

The facts in *Robinson* v. *Hiles*, 119 Cal.App.2d 666 [260

P.2d 194], were substantially the same as those at bar. The court stated (p. 672):

"[I]n the instant case we have concluded that the so-called compromise was never completed. Respondent at no time signed any release or compromise, nor did she authorize anyone else so to do. Neither did respondent accept any check or money or authorize anyone else to do so in her behalf. In California it is settled law that mere employment of an attorney to represent a client in litigation does not carry with it the power to compromise that litigation. (*Burns* v. *McCain*, 107 Cal.App. 291, 294 [290 P. 623]; *Jones* v. *Noble*, 3 Cal. App.2d 316, 320 [39 P.2d 486].) We have carefully examined the authorities cited by appellant in his brief with reference to the finality of a dismissal with prejudice, which is the modern name for a retraxit, and which citations give evidence of commendable diligence and research, but we are satisfied that under the facts of this proceeding, where the agreement of compromise was never completed, the cited cases are not controlling."

We are satisfied that on the showing made the trial court abused the legal discretion vested in it by denying the motion. The law does not favor snap judgments. The policy of the law is to have every litigated case tried on its merits; and it looks with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. (*Berri* v. *Rogero*, 168 Cal. 736, 740 [145 P. 95].) The gist of plaintiffs' motion was that without their knowledge or consent they were deprived of their day in court to litigate their claim on the merits. The record, without conflict, supports their contention. To hold otherwise would be to erode a client's authority to control the cause of action and the subject matter of the litigation. Plaintiffs did not at any time authorize their attorneys to dismiss with prejudice and thus dispose of a $60,000 lawsuit, in which they had in the first instance been compelled to appeal, for $25 which their attorneys, without their authority, received from one who probably was not a party to the action. The fact that plaintiffs left "the procedure of the trial to Mr. Poppler" or that they were willing that Mr. Poppler do whatever was necessary to get to trial on May 7 does not indicate specific authorization to destroy plaintiffs' entire action against all defendants. It also appears evident from the record that Mr. Poppler did not intend to

wipe out his clients' cause of action against the defendants other than Thompson for a mere $25.

The appeal from the order of July 26, 1956, is dismissed. The order of October 18, 1956, is reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

The petition of respondents Earl L. Morrison, Florence E. Morrison and Roland W. Hoagland for a hearing by the Supreme Court was denied July 2, 1958.