[Civ. No. 8858. Fourth Dist., Div. One. Nov. 27, 1968.]

EIVIND VIGGE RAMBUSH, Plaintiff and Appellant, v. ELIZABETH THURNELL RAMBUSH, Defendant and Respondent.

Hunter M. Muir for Plaintiff and Appellant.

Buresh, Garety, Vallarino & Costamagna and Roger P. Garety for Defendant and Respondent.

WHELAN, J.—This appeal is from an order made June 8, 1967, under Code of Civil Procedure, section 473, setting aside a default, an interlocutory judgment of divorce entered upon that default, and a previous order of another department denying defendant's motion under Code of Civil Procedure, section 473.

### FACTS

Plaintiff Eivind Vigge Rambush (Rambush), a retired officer in the British army, filed a complaint for divorce against defendant Elizabeth Thurnell Rambush (Elizabeth) on January 10, 1966, in San Diego County. On March 8, 1966, Elizabeth filed a complaint for divorce against Rambush in Washoe County, Nevada. Rambush was served in San Diego County two days later with process in the Nevada action. Elizabeth was granted a default Nevada divorce on March 31, 1966.

On August 5, 1966, Elizabeth was served with summons in the California action at Squaw Valley, California; she failed to answer and her default was entered on September 7, 1966. Rambush was granted an interlocutory judgment of divorce on September 30, 1966. He was awarded $600 per month alimony; a Mercedez-Benz automobile was adjudged his sep-

arate property; he. was awarded $5,000 for attorney's fees and $2,179.50 in costs and investigative fees to be paid by Elizabeth.

On December 9, 1966, Elizabeth filed a motion to set aside the default judgment taken against her. With it she filed an answer containing a general denial and alleging the Nevada divorce as a defense to the California action.

In the notice of motion, her attorney, Max L. Early (Early) filled in "January 10, 1967" as the date of the hearing, which was held on January 17, with counsel for both parties present. The denial of the motion by Judge William P. Mahedy was embodied in a written order (January 17 order) which denied in terms the motion to set aside default and found there was no showing of excusable mistake, inadvertence, surprise or neglect; that Elizabeth had full knowledge since late January 1966 of the pendency of the action and obtained at least two copies of the complaint through her attorneys in San Francisco and Reno; that she knew on the date of the entry of the default that her default had that day been entered.

On March 6, 1967, Elizabeth, through new counsel filed a motion to set aside the default, the interlocutory judgment of divorce and the January 17 order. The proposed answer alleged the Nevada divorce and a 1954 contract of marriage as a defense; there was also a cross-complaint for divorce.

The second motion was granted on June 8, 1967, upon certain conditions.

### THE BASES OF THE SUCCESSIVE MOTIONS TO SET ASIDE DEFAULT

Both of Elizabeth's motions were upon the ground that her default had been taken as the result of inadvertence, mistake, surprise and excusable neglect.

The first motion was supported only by a declaration of Early, which stated, so far as relevant: "The attorney for the plaintiff and I had conferences regarding possible settlement of the claims of the plaintiff in the above-entitled matter. By reason of the negotiations regarding the conflicting claims of the parties, the answer of the defendant to the complaint in this matter was delayed.

"II. The default of the defendant has been taken for failure to answer the complaint. This failure was not wilful and was occasioned by the circumstances surrounding this claim; in addition thereto, the defendant was away from her home in

the State of Nevada for an extended period of time due to illness. She returned at the death of her father on or about October 26, 1966.''

The notice of the second motion stated as an additional ground: ''A new state of facts exists materially different from that known at the time application for such Order was made previously and was refused.'' It was supported by declarations of Elizabeth and Roger P. Garety (Garety), one of the new counsel.

Elizabeth's declaration stated, in relevant part:

''2. At the time of the entry of the default against me in the herein action, I had retained and was represented by MAX L. EARLY, ESQ., in this action;

''3. I was served with a copy of the Summons and Complaint in this action on August 5, 1966, in Placer County, California;

''4. My Attorney, MAX L. EARLY, advised me that since I had obtained a Nevada Decree of Divorce on March 31, 1966, . . . the Nevada Decree would be 'good' in the State of California and it would be unnecessary for me to do anything further with respect to the California action.

''5. I was not advised that my default was entered in the California action until on or about January 6, 1967, and I thereafter learned that my default was entered on September 7, 1966, in this action, or within two days after I was in default as a result of my failure to appear in this action.

''6. I am informed and believe, and thereon allege, that no notice in writing was given by plaintiff to me or to my attorney of his intention to enter my default as is customary in the practice of law in the State of California before entering a defendant's default particularly, in an action of the magnitude of this action in terms of the support that plaintiff was requesting in his Complaint.

''7. The plaintiff was advised of the fact that I was represented by MAX L. EARLY prior to the time of the entry of the default heretofore referred to.''

Garety's declaration consisted almost entirely of legal arguments, hearsay or conclusions, without stating the source of his information.

The sole matter contained therein that is neither argument, hearsay nor conclusion of the declarant is the statement: ''I am one of the attorneys for the defendant in the above-entitled matter, ELIZABETH THURNELL RAMBUSH. I was retained to represent MRS. RAMBUSH with respect to the above-entitled action on or about the 17th day of February, 1967.''

Rambush's attorney, Hunter Muir (Muir), filed a declaration in opposition to the first motion on January 11.

That declaration, under penalty of perjury, contained copies of letters between him and various persons and uncontradicted statements from all of which the following appears either directly or by inference:

On August 30, 1965, Muir wrote a member of the San Francisco firm of Brobeck, Phleger and Harrison (Brobeck firm) concerning a threatened action for divorce by Elizabeth, to which the Brobeck firm responded on September 14 that it represented Elizabeth; contact between Muir and the Brobeck firm, with a meeting in San Francisco attended by Muir, and exchanges of letters, continued until January 25, 1966, when the Brobeck firm wrote Muir it had no authority to accept service of summons in the California divorce action, the commencement of which was mentioned by Muir in a letter dated January 21 in which Muir also said Elizabeth had moved to a specified address in Reno, Nevada; on March 15, 1966, Muir wrote Charles E. Springer (Springer), the attorney who filed the Nevada action on Elizabeth's behalf giving information as to the prior pendency of the California action and requesting the present Nevada address of Elizabeth; so far as appears, Springer made no response; next, a letter dated July 15, 1966 from Muir to Early, who was in the Lake Tahoe area, speaks of an oral offer made by Early; Early, under date of July 22, answered in a letter that indicates Early had been in direct communication with Rambush before July 15 with regard to the latter's vacating Elizabeth's house occupied by him; the July 22 letter contained a "final offer"; there is a letter to Muir from an investigator dated August 11, 1966 reporting the service of summons on August 5 and enclosing a statement for the cost of 995 miles traveled and 133 hours spent in attempting service; there is a letter from First Western Bank and Trust Company dated November 16, 1966, acknowledging receipt of a letter from Muir of October 20 and of a copy of the interlocutory decree of divorce and indicating that copies of the bank's letter went to "S. Schlaet," C. Springer and M. L. Early.[1]

The declaration stated that Muir had been told by Springer that the latter, in the first part of February 1966, obtained a copy of the California complaint from the Clerk of the Superior Court of San Diego; and that Muir told Early Muir

[1]Under the name of Sandra Schlaet, Elizabeth was beneficiary of a trust created by a pre-deceased husband and administered by the bank.

would not grant Early or Elizabeth any additional time to answer and that if Elizabeth did not answer the complaint within 30 days, Muir would take her default, and told Early the reason he would not extend Early any additional time was that Early, Elizabeth's attorneys in Nevada and in San Francisco, as well as her friends, relations and servants, had aided and assisted her in evading service of process and that it had cost Rambush a tremendous amount of money to make service of a copy of the summons on Elizabeth; that on November 23, 1966, Rambush, relying upon the validity of the interlocutory judgment of divorce, boarded a ship for Europe where he would arrive on January 14, 1967.

Muir's declaration in opposition to the second motion contained this statement, which also is uncontradicted: "[T]he present attorney of record for the defendant, Max L. Early, expressed to the affiant his full knowledge of the divorce proceedings pending in this court, and he was advised after service on the defendant that no extension of time to plead would be granted by this affiant by reason of the deliberate evasion of service at tremendous cost to the plaintiff in finally effecting service, which fact he admitted."

The questions involved are the effect of the denial of the first motion in relationship to the second motion, and the sufficiency of the showing in support of the second motion to justify the relief granted.

▆ The trial court has jurisdiction to entertain a second motion for relief under section 473, Code of Civil Procedure after denial of a first such motion. (*Kenney* v. *Kelleher,* 63 Cal. 442; *Hitchcock* v. *McElrath,* 69 Cal. 634 [11 P. 487]; *Harth* v. *Ten Eyck,* 16 Cal.2d 829 [108 P.2d 675]; *Bice* v. *Stevens,* 160 Cal.App.2d 222 [325 P.2d 244]; *Dahlin* v. *Moon,* 141 Cal.App.2d 1 [296 P.2d 344]; *Yarbrough* v. *Yarbrough,* 144 Cal.App.2d 610 [301 P.2d 426]; *Hover* v. *MacKenzie,* 122 Cal.App.2d 852 [266 P.2d 60].)[2]

This is so even though no new evidence is presented in support of the second motion, in which situation the second motion has been considered as a renewal of the first motion. (*Harth* v. *Ten Eyck, supra,* 16 Cal.2d 829.[3])

---

[2] In *Hitchcock* v. *McElrath,* 69 Cal. 634 [11 P. 487], the order denying the second motion provided that the motion might be renewed. It was renewed and the order of denial was set aside and the motion granted.

[3] "There is no impropriety or error in a judge reversing himself if he later concludes he was wrong the first time. He would stultify himself if he did otherwise. The motion to reconsider was in effect a renewal of the motion to vacate and set aside the default and the judgment." (*Hover* v. *MacKenzie,* 122 Cal.App.2d 852, 857 [266 P.2d 60].)

The right to hear and decide the second motion is not barred by application of the doctrine of res judicata (*Harth* v. *Ten Eyck, supra,* 16 Cal.2d 829, 833-834; *Kenney* v. *Kelleher, supra,* 63 Cal. 442, 444); even though the order denying the first motion shall have become final, as in *Bice* v. *Stevens, supra,* 160 Cal.App.2d 222.[4]

■ A second motion, decided after an appealable order denying the first motion has become final, cannot be considered as a renewal of or an amendment to the first motion. (*Macbeth* v. *Macbeth,* 219 Cal. 47 [25 P.2d 11].)[5]

We believe the hearing of the second motion by a judge other than the judge who heard the first motion cannot properly be described as a reexamination and reassessment of the evidence.

■ Where, after the denial of a first motion to set aside a default, a second such motion is heard by a different judge, the second judge should not be able to pass upon matters of fact already decided by the other judge, any more than he should do so on a motion for new trial (see *City of Long Beach* v. *Wright,* 134 Cal.App. 366 [25 P.2d 541]; *David* v. *Goodman,* 114 Cal.App.2d 571 [250 P.2d 704]; *Kelly* v. *Sparling Water Co.,* 52 Cal.2d 628 [343 P.2d 257] [dictum]). However, if new and additional material is presented in support of the second motion that could not with due diligence

---

"[T]he power of the court to resolve the conflicts was not exhausted by its conclusions on the order of denial, but it had the power to reexamine the evidence and arrive at a different conclusion, if it thought the ends of justice would be best served thereby. Unless an abuse of discretion was committed, the final order of the court should be permitted to stand." (*Harth* v. *Ten Eyck,* 16 Cal.2d 829, 834 [108 P.2d 675].)

[4]The Supreme Court, in denying a hearing in *Thomas* v. *Superior Court,* 6 Cal.App. 629, 632 [92 P. 739], said: "In denying the application we do not wish to be understood as giving assent to the proposition that a trial court has not jurisdiction to entertain a second application for relief from a judgment, made in due time under section 473, Code of Civil Procedure, although it had denied the former application, and its ruling thereon had been affirmed on appeal."

"[T]he court has the power to act under appropriate legislative authority, such as section 473 of the Code of Civil Procedure, on *proper notice.* When this is done during the course of the trial, the doctrine of *res judicata* does not necessarily apply and the test of the regularity of the court's action on an appeal from the order is, as stated, whether the court has abused its discretion in permitting a renewal of the motion and in arriving at a different conclusion." (*Harth* v. *Ten Eyck,* 16 Cal.2d 829, 834 [108 P.2d 675].)

[5]"[D]espite its designation, this later motion must be regarded as an independent and separate request for relief. The original motion was no longer capable of amendment for the order denying it had become final." (*Macbeth* v. *Macbeth,* 219 Cal. 47, 48 [25 P.2d 11].)

have been presented at the hearing of the first motion, such new material, together with that originally presented, might be considered in passing upon the second motion.

■ We are of opinion that a second motion for relief under section 473, Code of Civil Procedure, ruled upon after an earlier appealable order denying such a motion has become final, may be granted only upon the grounds that such appealable order was taken against the moving party as the result of his inadvertence, mistake, surprise or excusable neglect, under the provisions of section 473, or if new matter not available at the time of hearing of the first motion is produced in support of the second motion.[6]

### SUFFICIENCY OF THE SHOWING MADE IN SUPPORT OF THE SECOND MOTION

■ We have concluded that Elizabeth has not supported her second motion with material that would permit setting aside the January 17 order as one taken against her by reason of her inadvertence, mistake, surprise or excusable neglect.

Grounds for setting aside the first order would exist if she, in reliance upon advice given her by Early before the service of summons on her that she should ignore any such papers served upon her because of the Nevada decree, failed to let Early know she had been served with summons; and that such failure on her part was not brought to the attention of the court in the first hearing because Early failed to inform her of the taking of the default, and of the proceedings to set aside the default; or she might have shown that after service of summons she consulted her attorney with reasonable diligence and was then advised by him that she need not take any steps to defend the action because of the Nevada divorce; and, believing and relying upon such advice, she did nothing; and did not know that her attorney had moved to set aside the default, or, knowing that fact, she did not know that he failed to assert as a reason for the default his mistake as to the law.

---

[6]See *Stephens* v. *Baker & Baker Roofing Co.*, 130 Cal.App.2d 765, 773 [280 P.2d 39], which states: "Nor is the fact that the motion to vacate was heard by a judge other than the one who heard the motion to dismiss significant. A reading of the affidavits on the motion to vacate shows conclusively that the true facts were not present before the first judge due to the emotional distress, surprise and inadvertence of plaintiff's counsel." See also *Phillips* v. *Trusheim*, 25 Cal.2d 913, 917 [156 P.2d 25], which holds: "[N]or does it appear that, in ruling upon Trusheim's motion, Judge Turrentine had before him any matters not considered by Judge Thompson when he rendered judgment for the appellants."

The declarations in support of the second motion do not show the existence of either such set of facts.

We have concluded further that all the material before the court on the hearing of the second motion, the notice of which stated it was made upon the declarations of Elizabeth and Garety and the papers on file, do not show inadvertence, mistake, surprise or excusable neglect of the character required by the authorities.[7]

The guiding principles for passing upon an application for relief from default have often been iterated. ▉ In reviewing the ruling of a trial court in dealing with such applications, a Court of Appeal will look with a more indulgent eye upon an order granting such relief than upon one denying the application.

" 'This court has always looked with favor upon orders excusing defaults and permitting controversies to be heard upon their merits. Such orders are rarely reversed, and never ''unless it clearly appears that there has been a plain abuse of discretion.'' ' . . . While a large amount of discretion is thus vested in the trial court in the matter of an application for the setting aside of a default judgment [citations], the ensuing decision must rest upon sound considerations consistent with the showing made for the relief sought." (*Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523, 525-526 [190 P.2d 593].)

"The burden of proof on such a motion is on the moving party who must establish his position by a preponderance of the evidence. [citations] It is for the trial court to determine all conflicts in the testimony or affidavits [citations] and if there is a conflict the determination of the trial court is conclusive on appeal [citations]." (*Luz* v. *Lopes,* 55 Cal.2d 54, 62 [10 Cal.Rptr. 161, 358 P.2d 289].)

Where there has been a period of as much as three months

---

[7]Among the papers on file is a declaration by Elizabeth, not included in the clerk's transcript, that is referred to in Rambush's brief. It is dated March 2, 1967, filed March 6, 1967, bears the name of Garety's firm, and is styled "Declaration . . . in support of Motion to Substitute Attorneys" and is accompanied by proof of service on Early. As the sole reason for the substitution it stated: "[t]hat I am not satisfied with the representation given to me in this action by MAX L. EARLY, and I have had difficulty in consulting with him with respect to matters related to this action."

There is no proof of service on Early of the declaration as to Early's bad advice. Of course, service on him of that declaration was not necessary for a hearing of the motion to set aside default. The other declaration was served on him. A substitution of attorneys signed by Early was filed on March 8. In his request for preparation of the clerk's transcript, Muir asked for the complete file.

between the default and the first motion to set it aside, the circumstances occasioning the attorney's delay of more than three months before the institution of proceedings should have been presented in support of defendant's motion for relief. (*Benjamin* v. *Dalmo Mfg. Co.*, 31 Cal.2d 523, 532 [190 P.2d 593].)

In the case last cited it was said: "Defendant cites certain cases where relief from the burdens of a default judgment has been deemed proper despite an extended period of delay in making the requisite application, but in each instance there was an explanation of all the circumstances involved." (*Benjamin* v. *Dalmo Mfg. Co.*, 31 Cal.2d 523, 530 [190 P.2d 593].)

In a variety of situations relief has been granted because of inadvertence, mistake, surprise or excusable neglect of the defaulted party or his attorney, as shown by the supporting affidavits. Thus, in *Douglass* v. *Todd,* 96 Cal. 655 [31 P. 623, 31 Am.St.Rep. 247], it appeared clearly that the client believed and relied upon the erroneous advice of counsel; in *Waite* v. *Southern Pac. Co.*, 192 Cal. 467 [221 P. 204], and *Svistunoff* v. *Svistunoff*, 108 Cal.App.2d 638 [239 P.2d 650], the attorney involved himself claimed that he permitted default to be taken because of his mistaken view of the law; in *Bice* v. *Stevens, supra,* 160 Cal.App.2d 222 [325 P.2d 244], the attorney of record exceeded his authority in dealing with a cause of action; in *Orange Empire Nat. Bank* v. *Kirk,* 259 Cal.App.2d 347 [66 Cal.Rptr. 240], and in *Daley* v. *County of Butte,* 227 Cal.App.2d 380 [38 Cal.Rptr. 693], the attorney of record flagrantly neglected his professional obligation; in *Dingwall* v. *Vangas, Inc.*, 218 Cal.App.2d 108 [32 Cal.Rptr. 351], retained counsel did not act in time because of a factual error as to the manner in which service was made; in *Nilsson* v. *City of Los Angeles,* 249 Cal.App.2d 976 [58 Cal.Rptr. 20], the factual error was as to the date by which a claim must be filed. In *Bartell* v. *Johnson,* 60 Cal.App.2d 432 [140 P.2d 878], the defaulted party comprehensibly but mistakenly applied a letter from counsel concerning a case already closed to a second action by the same plaintiff for the identical relief; in *Viles* v. *State of California,* 66 Cal.2d 24 [56 Cal. Rptr. 666, 423 P.2d 818], the defaulted party relied upon ambiguous advice from a person having a common interest with her adversary; in *Davis* v. *Davis,* 185 Cal.App.2d 788 [8 Cal.Rptr. 874], default was entered in violation of a written stipulation so as to amount to extrinsic fraud; in *Dahlin* v. *Moon, supra,* 141 Cal.App.2d 1, default was entered contrary

to an oral assurance that nothing further would be done until defense counsel got in touch with plaintiff's lawyer.

Numerous other instances of inadvertence, mistake or excusable neglect of the defaulted party or his attorney are cited in *Nilsson* v. *City of Los Angeles, supra,* 249 Cal.App. 2d 976, 981, and in *Benjamin* v. *Dalmo Mfg. Co., supra,* 31 Cal.2d 523.

Elizabeth has not set out facts to bring her application for relief within any of the fact situations categorized above. However, the law flexibly adapts itself to new fact situations.

When examined against that background of principles and precedents, the matters stated in the declarations in support of both motions taken together do not present an understandable explanation of the failure to contest the action or of the initial delay in moving to set aside the default; they fail to show what the facts were and whether the failure to contest the California action resulted from Elizabeth's neglect based upon her attorney's bad advice, or his neglect based upon his own mistake; they do not give a comprehensible explanation upon which the court's discretion might operate.

Among other deficiencies, Elizabeth's declaration fails to say that she believed and relied upon Early's advice.

Garety's declaration contains this statement: "On September 7, 1966, as a result of defendant's understanding that her Nevada Decree of Divorce was a valid decree and recognized in this State, her default was taken in the herein action without any notice to her." However, it does not so much as state the source of this obvious hearsay.

In that respect, her showing does not bring her within the rule of such cases as *Douglas* v. *Todd, supra,* 96 Cal. 655.

While Early has neither alleged nor admitted the error with which he is charged, such admission by him would not be necessary if it clearly appeared that it was Elizabeth's excusable neglect that was attempted to be shown. The latter does not clearly appear, and the absence of an admission by Early takes the case out of the rule of such cases as *Waite* v. *Southern Pac. Co., supra,* 192 Cal 467, in which an attorney has admitted his error.

If the action was not contested earlier because of Early's decision based upon his mistake as to the law, it would still be a question of fact whether his mistake was excusable. "In such cases all factors involved must be considered to determine whether relief should be granted or denied." (*Security*

*Truck Line* v. *City of Monterey,* 117 Cal.App.2d 441, 445 [256 P.2d 366, 257 P.2d 755], quoted in *Tammen* v. *County of San Diego,* 66 Cal.2d 468, 476 [58 Cal.Rptr. 249, 426 P.2d 753].) The trial court in the present case was not given the opportunity to consider all factors.

The declarations do not show when, if ever, Elizabeth informed Early she had been served with summons; when, with relation to the service upon her, she was advised by Early that because of the Nevada decree she need not do anything about the California action; whether she believed and relied upon that statement; whether, if she relied upon that statement, her reliance took the form of failing to inform Early she had been served, or, having informed him of the service, having been advised by him that nothing need be done and acquiescing in his advice; or of leaving with him the summons and complaint and the burden of determining what if anything should be done and of doing what might be necessary; or of telling Early to do nothing further about the California action; or of ignoring later communications from Early; whether, if she promptly informed Early she had been served, the default resulted from his failure to act because of a mistaken belief as to the law; when and from whom she learned that the California action must be contested; what she did or failed to do as a result of not having been advised until on or about January 6, 1967 that her default had been taken; what she would have done if she had been informed earlier of that fact; why that fact was not presented to the court at the first hearing held on January 17; if she had failed to let Early know of the service of summons upon her in reliance on his advice; why that fact was not presented to the court at the first hearing; why the motion for relief from default was not filed earlier than December 9, 1966; whether she was aware of the pendency of the first proceedings to set aside the default during their pendency.

It is no exaggeration to say that the declaration is so vague as to those matters as to seem almost to have been artfully designed to leave the court in ignorance of them. Yet the existence of some of those factors must have been shown to permit a determination of the reasons for failing to contest the action and for failing earlier to seek to set aside the default and for a determination whether such failures were excusable.

In *Benjamin* v. *Dalmo Mfg. Co., supra,* 31 Cal.2d 523, 526, the court quoted with approval the following: " 'If it be doubted whether the excuse offered is sufficient or not, or

whether the defense set up is with or without merit in *foro legis,* when examined under those rules of law by which Judges are guided to a conclusion, the judgment of the Court below will not be disturbed. If, on the contrary, we are satisfied beyond a reasonable doubt that the Court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other.' " (See also *Bailey* v. *Taaffe,* 29 Cal. 422; *Shearman* v. *Jorgensen,* 106 Cal. 483 [39 P. 863]; *Redding etc. Min. Co.* v. *National Surety Co.,* 18 Cal.App. 488 [123 P. 544]; *Fink & Schindler Co.* v. *Gavros,* 72 Cal.App. 688 [237 P. 1083]; *Essig* v. *Seaman,* 89 Cal.App. 295 [264 P. 552]; *Dunn* v. *Standard Acc. Ins. Co.,* 114 Cal.App. 208 [299 P. 575]; *Weinberger* v. *Manning,* 50 Cal.App.2d 494 [123 P.2d 531]; *Elms* v. *Elms,* 72 Cal.App.2d 508 [164 P.2d 936]; *Caton* v. *Caton,* 131 Cal.App.2d 451 [280 P.2d 876]; *Yarbrough* v. *Yarbrough, supra,* 144 Cal.App.2d 610; *Ross* v. *San Diego Glazed Cement Pipe Co.,* 50 Cal.App. 170 [194 P. 1059].)

In this case, if the uncontradicted declarations in opposition to the motion and the inherent inconsistency of some of the material in support of the motion be totally rejected, the propriety of the exercise of judicial discretion depends only upon the prima facie sufficiency of Elizabeth's showing. There is little scope for the drawing of inferences among possibly conflicting ones.

It may not be out of place, however, to mention the inconsistency between the material presented on the first motion and that on the second; the inconsistency between a belief the California action could be ignored, and the obvious evasion of service[8] long after the Nevada decree had been obtained; the fact that there is nothing from Early to support the claim that he told Elizabeth it would be unnecessary to do anything further with respect to the California action, considered in relation to the fact that in the declaration in support of her motion to substitute new counsel, of which a copy was served on Early, no mention was made of that particular claim. Likewise might be mentioned that the attempted defense was put forward only after it was known that the court in San Diego had ordered payment of support; and after Rambush had left Elizabeth's house where he had been living and had gone to Europe.

*Is there evidence that Elizabeth's counsel was lulled into inaction by any conduct of Rambush's lawyer?*

---

[8]The undenied charge that Elizabeth successfully evaded service over a period of months seems established.

Courts will scrutinize closely the circumstances surrounding the taking of a default through a lawyer who has been in communication with counsel for the defaulted party.

After a careful examination of all matters of record submitted at the hearings on both motions, we find no evidence of unfair dealing by Muir.

Early's declaration in support of the first motion sets out the fact that there had been such communication between Muir and himself; so far as appears there was no written communication after July 22; and the only evidence of any communication after service of summons on Elizabeth is the uncontradicted statement of Muir's declaration in opposition to the second motion that after service on her Muir had told Early that Muir would not agree to any extension of time. Early does not speak of any belief on his part that a default would not be taken.

The material in support of the second motion likewise shows only that Muir knew that Early represented Elizabeth, and that no written notice was given Early that Muir would have default entered.

However, prior to the entry of the Nevada decree, Muir had been in communication with two different sets of attorneys representing Elizabeth, the Brobeck firm and Springer in Nevada.

We may ask, if Muir had a duty to give written notice of his intention to take a default, to whom did he owe that duty? There was no counsel of record for Elizabeth in the California action; and no one had indicated an intention to appear therein. His contacts with the Brobeck firm had extended over a period of several months. His contacts with Early had been comparatively brief and had apparently resulted from a communication first made by Early to Rambush rather than to Muir. Between those two he had been in touch with Springer.

If the pattern of professional courtesy to be followed is that established by counsel for Elizabeth, then it must be said that Rambush's counsel looks the better in the comparison. Elizabeth's default was taken on the 33d day, and the judgment against her rendered on the 56th day after she was served; the course of the Nevada action was singularly free of the law's delays—default and judgment were both taken on the 21st day after service on Rambush in San Diego County.

We realize, of course, that Muir's purpose was not to have his client appear in the Nevada action.

In view of the uncontradicted statement that he informed Early after Elizabeth was served that no extension of time

would be agreed to, and gave his reasons, no basis exists for a claim of overreaching.[9]

In the premises, it can hardly be said that even professional courtesy called for anything from him.

### THE TERMS OF THE DECREE AS GROUND FOR SETTING ASIDE THE DEFAULT

We have in mind the rule stated in *Yarbrough* v. *Yarbrough, supra,* 144 Cal.App.2d 610, 614: ". . . that appellate courts, generally, are more inclined toward upholding orders vacating defaults than affirming denials of such motions, in order to dispose of cases, where possible, upon their merits. (citations) We are also aware that this rule applies with particular force to divorce actions. (citations)"

■ The California decree of divorce ordered Elizabeth to pay $600 per month to Rambush, an amount alleged in the complaint to have been furnished him monthly as spending money during the 11 years since the marriage in 1954. However, the prayer of the complaint was for a monthly allowance of $2,100; and the allegations of the complaint showed an ability of Elizabeth to pay such amount.

Such an allowance is unusual within the framework of ordinary American life. The provisions of the decree in that respect, however, do not add another ground for vacating a default under section 473, Code of Civil Procedure.

We are of opinion, therefore, that no basis was shown for setting aside, under the provisions of section 473, Code of Civil Procedure, the January 17 order; that there was no abuse of discretion in the denial of the first motion; that there was no showing, considering all the material submitted in support of both motions, of mistake, inadvertence, surprise or excusable neglect to justify the granting of the second motion; and no new matter in comprehensible explanation of the failure of Elizabeth to answer.

The order appealed from is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied December 19, 1968, and respondent's petition for a hearing by the Supreme Court was denied January 22, 1969.

---

[9]"We are unable to find a word in any of the affidavits of defendant's counsel which says or intimates that plaintiffs' counsel *agreed not to take a default.* On the contrary that affiant admits at least that he was told to get the answer in as soon as possible." (*Dunn* v. *Standard Acc. Ins. Co.,* 114 Cal.App. 208, 214 [299 P. 575].)